COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| WILLIAM SAMMY CASEY, JR., | § | |
| | | No. 08-10-00015-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 221st District Court |
| THE STATE OF TEXAS, | § | |
| | | of Montgomery County, Texas |
| Appellee. | § | |
| | | (TC # 09-06-05444-CR) |
| | § | |

**O P I N I O N**

A Montgomery County jury found appellant, William Sammy Casey, Jr., guilty of one felony count of continuous sexual abuse of a child and three felony counts of aggravated sexual assault of a child.[1]  *See* TEX. PENAL CODE ANN. §§ 21.02 & 22.021 (West 2011).  The trial court assessed Casey's punishment, enhanced by four prior felony convictions, at imprisonment for forty years on each count, with the four sentences to run concurrently.  In his brief to this Court, Casey brings five issues.[2]  Finding no reversible error, we overrule Casey's issues and affirm the judgments of the trial court.

**FIRST ISSUE**

In his first issue, Casey argues that Texas Penal Code section 21.02, which criminalizes continuous sexual abuse of a child and under which he was convicted, violates the jury-unanimity

---

[1]  The record reflects that the Texas Supreme Court transferred this case from the Ninth Court of Appeals to this Court.  *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

[2]  Casey's first, third, fourth, and fifth issues each present multiple separable legal questions and are, therefore, arguably multifarious and in violation of our briefing rules.  *See* G. Dix & J. Schmolesky, *Texas Practice Series: Criminal Practice and Procedure* §§ 55:105-55:107 (3rd ed. 2011).  Nevertheless, in the interest of justice, we consider all of Casey's issues.

guarantee of Article V, § 13, of the Texas Constitution and the due-process guarantee of the Fourteenth Amendment.[3,4] He argues that section 21.02 violates those constitutional guarantees because it allows jurors to convict even if they do not agree unanimously on which specific acts of sexual abuse the defendant committed. Casey argues further that, under section 21.02, the specific acts of sexual abuse the defendant committed are "factual elements" of the offense that, under the constitutional provisions in question, must be found by the jury unanimously. Casey's argument continues:

> [T]here is no denying that the statute's removal of the requirement of jury unanimity as to the predicate offenses . . . creates risk of serious unfairness to [a] defendant. . . . First, there is the risk that absence of a requirement that the jury agree on the particular acts committed will cover up disagreement among jurors about just what the defendant did or did not do. . . . The second risk of unfairness is that by not requiring the jurors to focus upon specific factual details, the jury may simply conclude that 'where there is smoke there is fire.' (Citations and some punctuation omitted.)

Although Casey does not explicitly challenge any of the trial court's rulings with respect to the validity of section 21.02, we think he is implicitly challenging the trial court's denial of his pretrial motion to quash Count I in the indictment, which charged him under section 21.02. We think that for two reasons. First, appealable error ordinarily occurs only when the trial court makes a mistake. *Hawkins v. State*, 135 S.W.3d 72, 76 (Tex.Crim.App. 2004). Second, before a statute may be challenged on appeal, it must be challenged in the trial court. *Karenev v. State*, 281 S.W.3d 428, 432-34 (Tex.Crim.App. 2009).

---

[3] Casey also argues that section 21.02 violates the due-course-of-law guarantee of Article I, § 19, of the Texas Constitution, but he did not make that argument below, and we do not consider it. *See* TEX. R. APP. P. 33.1.

[4] Casey's argument, as we understand it, is that the statute is unconstitutional on its face. *See Scott v. State*, 322 S.W.3d 662, 665 n.1 (Tex.Crim.App. 2010) (explaining the difference between facial and as-applied challenges to statutes).

We turn first to Casey's argument that the statute violates the jury-unanimity guarantee of Article V, § 13 of the Texas Constitution. The constitutionality of a statute is a question of law, and we review trial court rulings on questions of law de novo. *Esparza v. State*, 282 S.W.3d 913, 921 (Tex.Crim.App. 2009).

Article V, § 13, requires that jurors, before they may convict in a felony case, must agree unanimously on each element of the offense. *Jefferson v. State*, 189 S.W.2d 305, 311 (Tex.Crim.App. 2006). But Article V, § 13, does not require jurors to agree unanimously on the manner and means by which the elements were accomplished.[5] *Id*. Given this settled law, our task is to determine whether, under section 21.02, the specific acts of sexual abuse the defendant committed are true elements of the offense or whether they are merely the manner and means by which one of the elements is accomplished. If they are the former, then jury unanimity is required; if they are the latter, then jury unanimity is not required.

Section 21.02 provides, in relevant part:

> (b) A person commits an offense if:
> (1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and
> (2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age.
> (c) For purposes of this section, "act of sexual abuse" means any act that is a violation of one or more of the following penal laws:
> (1) aggravated kidnapping under Section 20.04(a)(4), if the actor committed the offense with the intent to violate or abuse the victim sexually;

---

[5] "'[W]hile jury unanimity is required on the essential elements of the offense, when the statute in question establishes different modes or means by which the offense may be committed, unanimity is generally not required on the alternate modes or means of commission.'" *Jefferson v. State*, 189 S.W.3d 305, 311 (Tex.Crim.App. 2006) (quoting *State v. Johnson*, 627 N.W.2d 455, 459-60 (Wis. 2001)). *See* G. Dix & J. Schmolesky, *Texas Practice Series: Criminal Practice and Procedure* § 43.21 at 890 (3rd ed. 2011).

3

(2) indecency with a child under Section 21.11(a)(1), if the actor committed the offense in a manner other than by touching, including touching through clothing, the breast of a child;

(3) sexual assault under Section 22.011;

(4) aggravated sexual assault under Section 22.021;

(5) burglary under Section 30.02, if the offense is punishable under Subsection (d) of that section and the actor committed the offense with the intent to commit an offense listed in Subdivisions (1)-(4); and

(6) sexual performance by a child under Section 43.25.

(d) If a jury is the trier of fact, members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed. The jury must agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse.

Under the plain language of section 21.02(b), the offense of continuous sexual abuse of a child has five elements: (1) a person (2) who is seventeen or older (3) commits a series of two or more acts of sexual abuse (4) during a period of thirty or more days, and (5) each time the victim is younger than fourteen. Under Article V, § 13, jurors, before they may convict under section 21.02(b), must agree unanimously on each of these five elements, but they need not agree unanimously on which specific acts of sexual abuse the defendant committed, because those acts are merely the manner and means by which the "series" element was accomplished. *Reckart v. State*, 323 S.W.3d 588, 600-01 (Tex.App.–Corpus Christi 2010, pet. ref'd); *Render v. State*, 316 S.W.3d 846, 857-58 (Tex.App.–Dallas 2010, pet. ref'd); C. Jones, "*Guilty of What? Unanimous Verdicts in Texas: Developing a Test to Distinguish Between Acts Constituting One Offense and Acts Constituting Separate Offenses*," 40 Tex. Tech L. Rev. 391, 414 (2008).

We turn next to Casey's argument that section 21.02 violates the due-process guarantee of the Fourteenth Amendment. The Legislature, consistent with the due-process guarantee, may define a criminal offense in a way that permits jurors to convict while disagreeing about the manner and

means of commission of that offense, provided the alternate manners and means of commission are basically equivalent morally and conceptually. *White v. State*, 208 S.W.3d 467, 469 (Tex.Crim.App. 2006); *Jefferson*, 189 S.W.3d at 313-14. In section 21.02, the alternate manners and means of commission of the offense, i.e., the alternate acts of sexual abuse listed in section 21.02(d), all involve actual or intended sexual abuse of a child, all are felonies, all are morally equivalent, and all are conceptually similar. Given all that, section 21.02 does not violate due process simply because it permits jurors to convict while disagreeing on the manner and means of commission of the offense. *Jacobsen v. State*, 325 S.W.3d 733, 739 (Tex.App.–Austin 2010, no pet.).

In view of the foregoing, we conclude that the trial court did not err in denying Casey's pretrial motion to quash Count I in the indictment, and we overrule Casey's first issue.

## SECOND ISSUE

In his second issue, Casey argues that the trial court erred in denying his proposed jury instruction to the effect the jury was not authorized to convict him under section 21.02 unless it agreed unanimously on which specific acts of sexual abuse he committed and when he committed them. Casey argues further that the trial court's denial of his proposed jury instruction had the effect of denying his state constitutional right to a unanimous jury verdict.

The record reflects that the trial court instructed the jury in accordance with the law set out in section 21.02, and, as we explained above, the law set out in section 21.02 is consistent with Casey's state constitutional right to a unanimous jury verdict. Consequently, we discern no error on the part of the trial court in its denial of Casey's proposed jury instruction. We overrule Casey's second issue.

## THIRD ISSUE

5

In his third issue, Casey argues that the trial court erred in denying his pretrial motion to sever Count VI in the indictment because the offense alleged in Count VI and the offenses alleged in the other counts were "so far apart in time [that] it cannot be said that they constitute[d] part of the 'same criminal episode.'" He also argues that the trial court erred in denying his motion to sever because he was unfairly prejudiced by the joinder of Count VI with the other counts.

We turn first to Casey's argument that the trial court erred in denying his motion to sever Count VI because the offense alleged in that count and the offenses alleged in the other counts were not part of the same criminal episode. As originally presented by the grand jury, the indictment contained six counts.[6] Count I alleged the continuous sexual abuse of G.H., a child younger than fourteen, from September 1, 2007, to March 23, 2008. Count II alleged the aggravated sexual assault of G.H. on or about June 15, 2003. Count III alleged indecency with a child by exposure, with G.H. as the victim, on or about June 15, 2003. Count IV alleged indecency with a child by contact, with G.H. as the victim, on or about June 15, 2003. Count V alleged the aggravated sexual assault of G.H. on or about June 15, 2004. And Count VI alleged the aggravated sexual assault of P.L., a child younger than fourteen, on or about June 15, 2006.

The record reflects that the trial court held a pretrial hearing on Casey's motion to sever Count VI. At that hearing, Casey argued that, given the dates of the various alleged offenses, "it seem[ed] a real stretch" that the offenses were all part of the same criminal episode. The State responded as follows:

> The State: Judge, the statute specifically provides that the Court may try [the alleged offenses] together if they arise out of the same criminal episode. The facts are so intertwined here. What we expect the evidence to show is that beginning sometime

---

[6] The State abandoned Counts III and IV after both sides closed at the guilt stage.

6

around 2002, 2003, Mr. Casey began abusing [G.H.], who is our primary victim. The reindictment that will – I'm – the reason I selected September 1, 2007 for Count I is that that was the date that the continuous sexual abuse statute went into effect. We anticipate the evidence will show that this was an on-going thing starting in 2002 and going on through March, April of 2008, that it started when [G.H] was a very young child and continued periodically through the years.

[P.L.] went to elementary school with our primary victim [G.H.]. We anticipate the evidence will show that [G.H.] and [P.L.] were at the defendant's home and the defendant subjected [P.L.] to a similar type of treatment. It was a one-time deal, but it was similar types of treatment including the use of a baby oil product as a lubricant for his hands and for his personal area. . . . We've selected – we've attempted to select milestone dates, but what happened is he victimizes a second victim in the course of an on-going victimization of the primary victim. . . . These are clearly part of the same criminal episode because they are repeated commissions of the same or similar crimes.

Texas Penal Code section 3.02(a) provides that "[a] defendant may be prosecuted in a single criminal action for all offenses arising out of the same criminal episode." TEX. PENAL CODE ANN. § 3.02(a) (West 2011). Texas Penal Code section 3.01 provides in relevant part that "'criminal episode' means the commission of two or more offenses, regardless of whether the harm is directed toward or inflicted upon more than one person . . . [if] the offenses are the repeated commission of the same or similar offenses." TEX. PENAL CODE ANN. § 3.01 (West 2011). On this record, the trial court could have reasonably concluded that all the offenses alleged in the indictment were part of the same criminal episode because they were the repeated commission of the same or similar offenses.[7] Section 3.01 does not require that all the offenses arising out of the same criminal episode occur within any particular time frame.

We turn next to Casey's argument that the trial court erred in denying his motion to sever

---

[7] A trial court ruling must be upheld on appeal if that ruling is supported by the record and is correct under any theory of law applicable to the case. *State v. White*, 306 S.W.3d 753, 757 n.10 (Tex.Crim.App. 2010). Also, we ordinarily review trial court rulings in light of the information and argument before the trial court at the time it ruled. *See* G. Dix & J. Schmolesky, *Texas Practice Series: Criminal Practice and Procedure* § 56:134 (3rd ed. 2011).

Count VI because the joinder of that count with the other counts unfairly prejudiced him. The record reflects that, at the hearing on his motion to sever, Casey's unfair-prejudice argument proceeded as follows:

> Defense Counsel: Your Honor . . . we believe the defendant would be unfairly prejudiced because he would be tried as a criminal generally instead of relating to either one accusation or the other. If the State can just throw in another case to try to prove this case, then he's being tried as a criminal generally. Again, there's only one allegation on [P.L.]. They have five counts on [G.H.], and one of them is of continuous sexual abuse. He's not accused of continuous sexual abuse of [P.L.]. He's accused of one type of offense – well, they are doing it frontwards and backwards in Counts I and II and only one offense and only one date for [P.L.]. It's not alleged that he's continuously abused her over a period of time. And, again, it's separated quite a bit in time from the allegations they've made on [G.H.] on both ends. June the 15th of 2006. The closest going further back is June – June the 15th, 2004 for [G.H.] and going forward, probably March the 23rd of 2008 or close to that time. So, it's a year and a half on this end. Two years on the other end.

In every case in which multiple felony counts are joined for trial, the defendant automatically faces potential prejudice of two closely-related types: first, the jury may convict him of some of the crimes alleged not because he is guilty of those crimes but because he is guilty of the other crimes and is therefore, in the eyes of the jury, a "bad person" who deserves to be punished; and second, the jury may infer that because he committed some of the alleged crimes, he probably committed all of them. *Llamas v. State*, 12 S.W.3d 469, 471-72 (Tex.Crim.App. 2000). For that reason, a defendant, in the usual case of joinder, has an absolute right to severance. TEX. PENAL CODE ANN. § 3.04(a) (West 2011). But, in a case involving multiple felony counts of alleged sex offenses against children, the Legislature has balanced the competing interests and has determined that the defendant is entitled to a severance only if he can show "unfair" prejudice because of joinder. TEX. PENAL

8

CODE ANN. § 3.04(c) (West 2011).[8]  That is to say, the defendant must show some type of prejudice beyond that which a defendant would automatically face in any case in which felony counts are joined.

When Casey argued to the trial court that the joinder of Count VI with the other counts would cause him to be "tried as a criminal generally," he was claiming nothing more than the type of prejudice that a defendant would automatically face in any case in which felony counts are joined. Therefore, on this record, the trial court could have reasonably concluded that Casey had not shown "unfair" prejudice within the meaning of section 3.04(c).

We overrule Casey's third issue.

### FOURTH ISSUE

In his fourth issue, Casey argues that the trial court erred in denying his second amended motion in arrest of judgment and for a new trial because Juror E.P. "was not a qualified voter in Montgomery County, and his untruthfulness amounted to corrupt conduct."  With respect to this issue, the record reflects the following:

During the jury-selection process, E.P. wrote on his juror questionnaire that his home address was 18573 Pickering Road in Conroe and that his mailing address was P. O. Box 1041 in New Caney.  He also wrote that Montgomery County was his county of residence.  E.P. was later selected to serve, and did serve, on the jury.

On October 28, 2009, after the jury returned its verdict on guilt but before the trial assessed

---

[8]  The legislative history of section 3.04(c) reveals that the subsection was intended to "restrict defendants' right to multiple trials for serious sex offenses committed against children so that child victims cannot be forced to undergo multiple trials."  House Research Organization, Texas House of Representatives, 75th Legislature, Bill Analysis of S.B. 381, p. 4 (May 20, 1997).

punishment, Casey filed a motion in arrest of judgment in which he argued that Juror E.P. did not actually reside at the Pickering Road address and was possibly not a resident of Montgomery County. On November 4, 2009, the trial court held an evidentiary hearing on Casey's motion. At that hearing, E.P. testified as follows:

Q: What did you show as your home address on the juror information sheet, [E.P.]?

A: It was the physical address I show, Pickering Road, Conroe, Texas.

Q: And was that your actual address?

A: No. I'm living in an R.V. park in Splendora.[9]

.   .   .

The Court: Okay. What was your relationship to the address you put on that form?

A: It was my daddy-in-law's house.

.   .   .

The Court: How come you chose that address? What was your thinking?

A: Well, I lived there for a while.

The Court: Okay.

A: He was my best friend so –

The Court: Okay.

A: But, since then, I moved – I've lived in several R.V. parks, all been in Montgomery County.

.   .   .

Q: And are you registered to vote?

---

[9] We take judicial notice that an "R.V. park" is the common term for a facility, typically privately owned and operated, in which recreational vehicles may be parked and occupied.

A: Yes, ma'am.

The Court: And where do you vote?  What county?

A: Montgomery County.

. . .

Q: And for purposes of registering to vote, you were still using 18573 Pickering Road in Conroe as your voting address?

A: Yes, as a physical address.

. . .

Q: Why did you not use your correct address for voter registration, sir?

A: Because I already had my driver's license with that address, and that's what I listed it at.  I mean, I can't use an R.V. trailer for a permanent residence.

. . .

Q: But you don't live [at the Pickering Road address], sir.

A: I live in Montgomery County at Countrywide R.V. Park.

. . .

Q: Okay. [The R.V. park] is where you physically live, correct?

A: Yes, sir.

. . .

Q: Okay.  You've lived continuously in Montgomery County since 1969?

A: Yes, sir.

. . .

Q: Okay.  Did you feel that it was appropriate to use [the Pickering Road address] as an address because it was the official address on your driver's license?

A: Yes, sir.

Q: Okay. Were you trying to trick or deceive or engage in any shark practices or fool anybody by using that address?

A: No, sir.

.   .   .

Q: And do you make payments for the spot at the R.V. park?

A: Yes, sir.

Q: Okay. And how long have you lived there?

A: It's been probably three years. Almost three years.

On November 12, 2009, Casey filed a first amended motion in arrest of judgment and for a new trial. On November 18, 2009, he filed a second amended motion in arrest of judgment and for a new trial. In that second amended motion, Casey argued that E.P. was "not a qualified voter" within the meaning of Article 35.16 of the Texas Code of Criminal Procedure because E.P., at the time of trial, did not live at the Pickering Road address and in fact had "no actual permanent residence" in Montgomery County. Casey argued further that E.P., in failing to put his correct home address on his juror questionnaire, had engaged in "corrupt conduct" within the meaning of Texas Rule of Appellate Procedure 21.3(d). On November 19, 2009, the trial court held a hearing on Casey's second amended motion and overruled it.

We turn first to Casey's argument that the trial court erred in denying his second amended motion in arrest of judgment and for a new trial because E.P., at the time of trial, had "no actual permanent residence" in Montgomery County and, therefore, was not a qualified voter of that county. Article 35.16 requires that jurors be eligible to vote in the county in which the trial is being held.

12

*Mayo v. State*, 4 S.W.3d 9, 11 (Tex.Crim.App. 1999); TEX. CODE CRIM. PROC. ANN. art. 35.16 (a)(1) (West 2006). To be eligible to vote, a juror must, among other things, be a resident of the county. *Mayo*, 4 S.W.3d at 11. On this record, the trial court could have reasonably concluded that E.P. was, at the time of trial, a resident of Montgomery County.

We turn next to Casey's argument that the trial court erred in denying his second amended motion in arrest of judgment and for a new trial because E.P., in failing to put his correct home address on his juror questionnaire, engaged in corrupt conduct. Texas Rule of Appellate Procedure 21.3(d) provides that "[t]he defendant must be granted a new trial . . . when a juror has been bribed to convict or has been guilty of any other corrupt conduct." TEX. R. APP. P. 21.3(d). On this record, the trial court could have reasonably concluded that E.P., when he wrote on his juror questionnaire that his home address was 18573 Pickering Road in Conroe, was acting reasonably and in good faith and was not engaged in "corrupt conduct" within the meaning of Rule 21.3(d).

We overrule Casey's fourth issue.

**FIFTH ISSUE**

In his fifth issue, Casey argues that the trial court erred in denying his "motions for mistrial and/or new trial, where the cumulative effect of multiple errors resulted in an unfair trial . . . ." In this issue, Casey reiterates most of the arguments he made in his first four issues and, in addition, makes four new arguments. We will address only the four new arguments.

We turn first to Casey's argument that the trial court erred in overruling his objection and denying his motion for mistrial when twelve-year-old G.H. testified with a female employee of the District Attorney's Office sitting beside her. The record reflects that Casey objected to this seating arrangement and moved for mistrial several minutes into G.H.'s testimony.

13

To be timely, a request, objection, or motion must be made at the earliest opportunity. *King v. State*, 953 S.W.2d 266, 268 (Tex.Crim.App. 1997); TEX. R. APP. P. 33.1. On this record, the trial court could have properly overruled Casey's objection and denied his motion for mistrial on the ground they were untimely.

We turn next to Casey's argument that the trial court erred in denying his motion for mistrial when G.H., during her testimony on direct examination, mentioned Casey's prior incarcerations. The record reflects that, during the testimony in question, the following occurred:

Q: Okay. Let me ask you some things that may be hard to talk about. Okay?

A: Okay.

Q: Did anything weird ever happen?

A: Yes, sir.

Q: Okay. With whom?

A: Huh?

Q: With whom?

A: William.

Q: Okay. When you say "William," who are you talking about?

A: William Casey. My stepdad.

. . .

Q: Okay. Why didn't you tell your mom right away?

A: I was scared to.

Q: What were you scared of?

A: I was scared that something would either – I would – I was just scared that either

14

something would happen to her or something would happen to [my younger sister].

Q: Why were you scared of that?

A: Because I knew about the previous times that William was in jail and I was just scared and –

At that point, Casey asked for an instruction to disregard and moved for mistrial. The trial court instructed the jury to disregard G.H.'s last answer but denied a mistrial.

The fact that Casey had been incarcerated was certainly prejudicial and inadmissible under Evidence Rule 403. *See* TEX. R. EVID. 403. However, the bare fact of Casey's prior incarceration, unembellished, was not so inflammatory as to be incurable by an instruction to disregard. *Gardner v. State*, 730 S.W.2d 675, 697 (Tex.Crim.App. 1987). Thus, the trial court did not err in denying Casey's motion for mistrial. But even assuming *arguendo* that the trial court erred, we are persuaded the error did not have a substantial and injurious effect or influence in determining the jury's verdict. *King*, 953 S.W.2d at 271; TEX. R. APP. P. 44.2(b). The State's case at the guilt stage was strong. G.H. testified in considerable detail about how Casey abused her sexually on numerous occasions over a period of years. Misha Pratt, an employee of Child Protective Services, testified that she spoke with G.H. on March 27, 2008, and that when she asked G.H. whether she had been sexually abused, G.H. "put her head on the desk" and "shut down." Jessica Garrett, G.H.'s stepmother, testified that on one occasion when G.H. was about ten years old, she spoke with G.H. about the fact that "nobody has the right to touch" G.H.'s "private area." G.H., in response to Garrett's comment, "put her head down and would not make eye contact, refused to look at anyone or discuss it." Linda Butterworth, a psychotherapist, testified that child victims of sexual abuse have "a lot of trouble disclosing what happened" because they "are afraid that their families will be destroyed."

15

Kari Prihoda, a forensic interviewer of children, testified that she interviewed G.H. on March 28, 2008, and that G.H. "knew a lot of information, specific details [about sexual matters] compared to some of the children" that she had interviewed. Karen Trevino, a registered nurse, testified that she examined G.H. on March 28, 2008, and found that G.H.'s hymen had two tears or "notches." Larry Till, a physician, testified that G.H.'s hymenal notches, because of their exact location, were probably not congenital and "would tend to corroborate the statement of a child who said that she had been penetrated by a penis in her vagina." And P.L., a friend of G.H., testified in detail about how Casey sexually abused her on one occasion.[10]

We turn next to Casey's argument that the trial court erred in denying his motion for mistrial when a juror saw him, unshackled and in civilian clothing, being escorted through the courthouse by two uniformed officers. Casey does not explain which right of his was violated by this occurrence, but we assume he is concerned about his due-process right to the presumption of innocence. *See Holbrook v. Flynn*, 475 U.S. 560 (1986). Being escorted through the courthouse by uniformed officers, however, need not be interpreted as a sign that one is particularly dangerous, so we discern no inherent prejudice here and no error in the trial court's denial of a mistrial.

We turn finally to Casey's argument that the trial court erred in not granting his motion for new trial because "the continued presence of members of Bikers Against Child Abuse in the courtroom throughout the trial was prejudicial." As far as we can discern from the record, Casey first complained about this matter in his motion in arrest of judgment, which he filed after the jury had returned its verdict on guilt but before the trial court assessed punishment. On this record, then, the trial court could have properly overruled the complaint as untimely. TEX. R. APP. P. 33.1.

---

[10] For the sake of brevity, we have discussed only the highlights of the State's case.

16

Having found no error, we also find no cumulative error, and we overrule Casey's fifth issue.

## CONCLUSION

We affirm the judgments of the trial court.


GUADALUPE RIVERA, Justice

August 31, 2011

Before Chew, C.J., McClure, and Rivera, JJ.

(Publish)

17