**Affirmed as Modified and Opinion Filed August 26, 2013**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-12-00377-CR**

**MANUEL LEIS PEREZ, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 3**
**Dallas County, Texas**
**Trial Court Cause No. F10-31001-J**

## OPINION

Before Justices Bridges, FitzGerald, and Myers
Opinion by Justice FitzGerald

A jury convicted appellant of continuous sexual abuse of a young child. The trial judge

heard punishment evidence and assessed punishment at forty years' imprisonment. Appellant

asserts fourteen issues on appeal, generally categorized as challenges to the jury charge, the

denial of his request for a mistrial, the denial of his motion to quash the indictment, the

sufficiency of the evidence, and an allegedly ambiguous verdict. In a cross-point, the State

requests that the judgment be modified to reflect that the trial court assessed punishment. We

modify the trial court's judgment, and as modified, affirm.

## I. BACKGROUND

S.T. was born in 1996, and never had a relationship with her biological father. Her

mother Brenda married Raymond Cruz when S.T. was six, but Cruz never accepted S.T. as his

daughter. In the summer of 2009, Cruz kicked thirteen-year-old S.T. out of the house and S.T. went to live with her aunt Prysila and Prysila's husband, appellant.

While living with Prysila and appellant, S.T. watched a movie called "Towel Head" with them about a thirteen-year-old girl doing sexual things with her older, married neighbor. After the movie ended, and Prysila left the room, appellant asked S.T. about a sexual scene in the movie. Sometime later in the summer of 2009, appellant began sexually abusing S.T.

On the first occasion of sexual abuse, S.T. was lying on the couch in the living room watching television at 3:00 or 4:00 a.m. when appellant came down the stairs. Appellant was breathing heavily and asked her if she had ever seen a penis. When S.T. responded that she had not, appellant pulled his penis out and told her to look at it. Appellant next told S.T. to kiss it and grabbed the back of her head and pushed her head down on his penis multiple times. While appellant's penis was inside S.T.'s mouth, "sperm came out" into her mouth. Appellant also rubbed the outside of S.T.'s vagina with his fingers before telling her to go sleep in his daughter's room.

The remainder of the summer passed without any further sexual abuse. In mid-August 2009, Brenda was planning to leave Cruz and took S.T. to live with David, the man she was dating. S.T. lived with David and his two teenage daughters from mid-August until mid-October 2009 and attended Lamar Middle School in Lewisville. In mid-October, Brenda realized that she was not brave enough to leave Cruz, and she brought S.T. home to live with them in Cedar Hill.

At appellant's suggestion, Brenda transferred S.T. to Jackson Middle School in Grand Prairie, so appellant could take S.T. to and from school. In October, Brenda began taking S.T. to appellant and Prysila's house before school, and appellant drove S.T. and his sons to school. One morning, appellant did not take S.T. directly to school. Instead, he took her back to his house, led her to his bedroom, removed their pants and underwear, and put his penis inside her

vagina. S.T. flinched from the pain caused by appellant's penis in her vagina and started bleeding. When appellant removed his penis from S.T.'s vagina, he ejaculated onto the bed. Afterward, appellant took S.T. to school.

Appellant returned to his house with S.T. and put his penis in her vagina "mostly every day in the morning" before school. S.T. testified that this happened more than ten times. Additionally, appellant "sometimes" put his mouth on her vagina, and appellant made S.T. put her mouth and her hands on his penis "most" mornings as well. S.T. explained that appellant made her move her hands or mouth until "sperm" came out and told her to swallow it.

Appellant also abused S.T. after school at his place of employment: he told a woman at the office that she could leave and took S.T. into his office. Appellant showed S.T. pornography on his laptop computer, including pornography featuring people having sex with animals. While watching the pornography, appellant unzipped S.T.'s jeans, placed a little, red vibrator on her vagina, and kissed her "in the mouth." Appellant also put his penis inside S.T.'s vagina on the floor of his office. On other occasions, appellant drove to the parking lot of Home Depot and Chili's or a nearby wooded area before or after S.T.'s school day to commit sexual acts. He touched her vagina with his hands in the parking lot before school, and he touched her vagina with a "dildo" in the wooded area one afternoon.

When asked if appellant used the "dildo" on her at other times, S.T. testified that appellant used it on her when they were in his bedroom before school, and would place the "dildo" inside her vagina. Appellant kept the "dildo" and vibrator in a red shoe box in his closet. Appellant told S.T. not to tell anyone about their activities or his daughter would not have a dad. This made S.T. sad.

The first person S.T. told about the abuse was her aunt Prysila. Appellant and Prysila hosted a New Year's party on December 31, 2009. S.T. and another girl drank alcohol during

–3–

the party, and S.T. became intoxicated. She was in the restroom when Prysila entered the room, crying. When Prysila told her that appellant said he had found S.T. touching herself on the sofa one night, S.T. told her aunt "what really happened." Appellant later left to drive someone home after the party ended, and while he was gone, Prysila took S.T. to the bathroom and showered with her before dressing herself and S.T. in lingerie. Appellant returned home, talked to Prysila, and then they took S.T. into their bedroom. Prysila used the "dildo" on S.T.'s vagina and had S.T. use it on her vagina while appellant watched.

Appellant and Prysila apologized to S.T. the next day and said that it would not happen again. Prysila did not have any further sexual contact with S.T., but appellant continued having sex with her after he promised that he would not do anything else.

On January 15, 2010, appellant took S.T. out of school and drove her to a motel. He told her that they were going to the motel to have sex and that he planned to bring an ex-girlfriend to join them. The other woman did not meet them at the hotel, but appellant put his penis inside S.T.'s anus, causing her pain. A motel receipt admitted as evidence during trial showed that appellant rented a room at the La Hacienda Motel in Grand Prairie on January 15, 2010. Additionally, school records from Jackson Middle School indicated that S.T. was out of her regular classroom in "some office" during sixth period on January 15, 2010, and the custodian of records acknowledged that it was possible that a student could leave the school after visiting the nurse's office.

At the end of January 2010, appellant texted Brenda to say that he would not be able to take S.T. to school anymore. Around the same time, Brenda noticed that S.T. was crying a lot. S.T. did not try to tell anyone about the abuse after she told Prysila, but she wrote a letter in a notebook. The letter stated that someone was touching her and that she felt bad but did not name anyone. Brenda found the letter and asked S.T. about it, but S.T. became nervous and would not

talk about it. Brenda then told S.T.'s grandmother. When the grandmother asked S.T. about the letter, S.T. told her what appellant had done to her, but she did not tell her about what had happened with Prysila. The grandmother called the police.

On February 23, 2010, Detective Christy Martinez of the Grand Prairie Police Department's Child Sex Unit met with the grandmother to take her statement about S.T.'s outcry. Detective Martinez contacted Brenda to schedule a forensic interview at the Irving Family Advocacy Center, and she sent S.T. to the Referral and Evaluation of At Risk Children ("REACH") program at Children's Medical Center in Dallas for a physical examination. The examination revealed an absence of tissue from an area of S.T.'s vaginal opening that was consistent with penetration. At trial, Dr. Matthew Cox, director of the REACH program, testified that the injury to S.T.'s hymen would have caused bleeding.

Detective Martinez obtained and executed a search warrant for appellant's house. She found a red shoe box in the master bedroom closet that contained the sex toys and a long brown hair strand. After appellant was arrested, the acting forensic biology supervisor at the Southwest Institute of Forensic Sciences ("SWIFS") performed DNA testing on the vibrator and "dildo" collected from appellant's home. All of the genetic markers present in the samples from the "dildo" and vibrator could be attributed to appellant, Prysila, and S.T.

At trial, a children's therapist testified about some concepts relating to child-sexual abuse, including grooming, delayed outcry of abuse, and accidental disclosure. Additionally, she testified about her experience as S.T.'s therapist. She testified that she had worked with over 300 children and that S.T. was "the child that has been the most hurt." She testified that S.T. had not disclosed the abuse by Prysila in any of their thirty-nine sessions, but that did not surprise her.

Appellant did not present any evidence during the guilt-innocence phase of trial. After hearing the court's charge and closing arguments, the jury found appellant guilty of continuous

sexual abuse of a young child as alleged in the indictment. Subsequently, the trial court heard punishment evidence and sentenced appellant to forty years' imprisonment. This timely appeal followed.

## II. ANALYSIS

### A. *Sufficiency of the Evidence*

In his first issue, appellant asserts the evidence is insufficient to support his conviction for continuous sexual assault of a young child. Specifically, appellant contends the State impermissibly relied on an act of anal penetration that occurred subsequent to S.T.'s fourteenth birthday and was not alleged in the indictment. Appellant also asserts the evidence to corroborate S.T.'s testimony was "ambiguous or tangential," and there was a "mere modicum of proof of sexual acts."

We review evidentiary sufficiency challenges under the *Jackson v. Virginia* standard. See *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013). Under this standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational fact finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

We do not weigh any evidence or evaluate the credibility of any witnesses, as this was the function of the fact finder. *Williams*, 235 S.W.3d at 750. Instead, we determine whether both the explicit and implicit findings of the fact finder are rational by viewing all the evidence admitted at trial in the light most favorable to the verdict and resolving any inconsistencies in the evidence in favor of the verdict. *Adelman v. State*, 828 S.W.2d 418, 422 (Tex. Crim. App. 1992).

To obtain a conviction, the State was required to prove beyond a reasonable doubt that, during a period that was thirty or more days in duration, appellant committed two or more acts of

sexual abuse and that, at the time of the commission of each of the acts of sexual abuse, appellant was seventeen years of age or older and the victim was a child younger than fourteen years of age. TEX. PENAL CODE ANN. § 21.02(b) (West Supp. 2012); *Fulmer v. State*, 401 S.W.3d 305, 305 (Tex. App.—San Antonio 2013, pet. ref'd); *McMillian v. State*, 388 S.W.3d 866, 870 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The indictment alleged that appellant:

> Then and there, intentionally and knowingly, during a period that was 30 or more days in duration, when the defendant was 17 years of age or older, commit two or more acts of sexual abuse against [S.T.], a child younger than 14 years of age, hereinafter called complainant, namely by the contact between defendant's hand and complainant's genitals with the intent to arouse and gratify the sexual desire of defendant, and by contact between the hand of the complainant and the genitals of the defendant with the intent to arouse and gratify the sexual desire of the defendant, and by the penetration of the complainant's female sexual organ by the defendant's finger, and by the penetration of the complainant's female sexual organ by the defendant's sexual organ, and by the contact between the mouth of the defendant and the female sexual organ of the complainant, and by the contact and penetration of the mouth of the complainant by the sexual organ of the defendant, and by the penetration of the female sexual organ by an object, to wit: a sex toy.

The record reflects that S.T. was born on January 5, 1996. S.T. was thirteen and appellant was thirty-eight when the abuse began. S.T. testified that the first instance of abuse was in the summer of 2009 when she first moved in with appellant and Prysila. Although there was a period of time after the first instance when there was no abuse because S.T. was living elsewhere, the abuse resumed in October 2009 when appellant began driving S.T. to school. S.T. described the numerous acts of abuse that would occur "most mornings" before school, and testified that it happened more than ten times.

S.T. also described the sexual abuse that occurred in appellant's office when he showed her pornography on his laptop computer, and abuse that would occur in the Home Depot or Chili's parking lot or in a nearby wooded area. S.T. related that appellant would put his penis or a sex toy in her vagina, and would sometimes put his mouth on her vagina. She further described

–7–

how appellant would put her mouth and hands on his penis. S.T. also testified about the night of December 31, 2009 when she was abused by both appellant and Prysila.

Appellant's complaints about the evidence as uncorroborated and elusive are without merit. It is well-established that the testimony of a child victim alone is sufficient to support a conviction for continuous sexual abuse. *See Mathis v. State*, 393 S.W.3d 332, 337 (Tex. App.—Dallas 2013, no pet.); *Connell v. State,* 233 S.W.3d 460, 466 (Tex. App.—Fort Worth 2007, no pet.); TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2012).

Nonetheless, much of S.T.'s testimony was in fact corroborated. The sex toys were found in a box in appellant's closet as S.T. described. DNA evidence showed that the genetic markers present in the samples from the sex toy could be attributed to appellant, S.T., and Prysila. The medical evidence further established a lack of tissue from S.T.'s vaginal opening consistent with penetration.

Therefore, we conclude the evidence was sufficient to prove that appellant committed two or more acts of sexual abuse over a period of thirty or more days prior to S.T.'s fourteenth birthday. Appellant's first issue is overruled.

**B.** *Charge Error*

In issues two through seven, appellant complains of charge error. Specifically, he argues the trial court erred: in failing to instruct the jury that any sexual abuse after S.T.'s fourteenth birthday was irrelevant, in submitting aggravated sexual assault as the proposed offense of conviction, and in authorizing conviction for conduct not alleged in the indictment. Appellant also asserts that he was deprived of a unanimous verdict and that these alleged errors in combination constitute cumulative error.

Appellate review of claims of jury-charge error involves a determination of whether the charge is erroneous and, if it is, a harm analysis. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex.

Crim. App. 2012). When, as in this case, no proper objection was made, the error requires reversal only if it is so egregious and created such harm that the accused did not have a fair and impartial trial. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *Ngo v. State*, 175 S.W.3d 738, 744–45 (Tex. Crim. App. 2005).

### 1. *Unanimous Verdict*

We begin with appellant's complaint that he was deprived of his right to a unanimous verdict. Specifically, appellant complains the charge authorized a guilty verdict even if the jury did not unanimously agree that appellant committed each separate act of sexual abuse or the exact date those acts were committed.

Texas courts employ a two-step analysis for unanimity challenges. *See Jefferson v. State*, 189 S.W.3d 305, 311 (Tex. Crim. App. 2006). The first step involves examination of the language of the statute in question to determine whether the legislature intended to create multiple, separate offenses of a single offense capable of being committed in different ways. *Id.* Jury unanimity is required on the essential elements of the offense but is generally not required on the alternative modes or means of commission. *Id.* The second step involves the determination of whether dispensing with jury unanimity on the alternate mode or means of commission violates due process. *Id*. at 312.

Appellant was charged with violating section 21.02 of the penal code which provides in pertinent part:

> If a jury is the trier of fact, members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed. The jury must agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse.

TEX. PENAL CODE ANN. § 21.02(d). The jury was instructed in accordance with the statute.

The Texas Constitution requires a unanimous verdict in all felony cases. TEX. CONST. Art. V §13. But this Court has previously concluded that section 21.02 does not violate the unanimity provision of the Texas Constitution. *See Render v. State*, 316 S.W.3d 846, 858 (Tex. App.—Dallas 2010, pet. ref'd). Our sister courts are in agreement with this conclusion. *See Martin v. State*, 335 S.W.3d 867, 872–73 (Tex. App.—Austin 2011, pet. ref'd); *Casey v. State*, 349 S.W.3d 825, 829–30 (Tex. App.—El Paso 2011, pet. ref'd); *Kennedy v. State*, 385 S.W.3d 729, 731–32 (Tex. App.—Amarillo 2012, pet. ref'd); *McMillan v. State*, 388 S.W.3d 866, 871–72 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Specifically, courts have explained that it is the commission of two or more acts of sexual abuse over the specified time period—that is, the pattern of behavior or the series of acts—that is the actus reus element of the offense as to which the jurors must be unanimous in order to convict. The individual acts of sexual abuse that make up this pattern of behavior or series of acts are not themselves elements of the offense, but are merely evidentiary facts, the manner and means by which the actus reus element is committed. When there is evidence of more than two acts of abuse over the specified time period, section 21.02(d) makes it clear that the jurors need not agree as to which individual acts were committed so long as they agree that the defendant committed at least two. *Render*, 316 S.W.3d at 857–58; *Casey*, 349 S.W.3d at 829; *Martin*, 335 S.W.3d at 872–73. Thus, Texas intermediate courts have routinely held that the individual acts of sexual abuse are manner and means, not an element of the offense, and section 21.02 does not violate the jury unanimity requirement. *See Render*, 316 S.W.3d at 857–58; *Casey*, 349 S.W.3d at 829; *Martin*, 335 S.W.3d at 872–73. Dispensing with jury unanimity on the underlying acts of sexual abuse does not violate due process or due course of law. *Render*, 316 S.W.3d at 857–58; *see also Reckart v. State,* 323 S.W.3d 588, 600–01 (Tex. App.—Corpus Christi 2010, pet ref'd).

–10–

Here, appellant was charged with the offense of continuous sexual abuse of a young child. This offense consists of the following elements: (1) "two or more acts of sexual abuse" (2) during a period of thirty or more days; (3) by a defendant who was at least seventeen years old at the time of each act of sexual abuse; and (4) a victim who is a child younger than fourteen years old. TEX. PENAL CODE ANN. § 21.02(b). Indecency with a child and aggravated sexual assault, as charged by the indictment, are alternative methods, or the "manner and means," of committing the element of "two or more acts of sexual abuse." *See Render*, 316 S.W.3d at 857. Therefore, unanimity was required only as to a finding that appellant committed two or more acts of sexual abuse—not as to which specific acts he committed. *See Render*, 316 S.W.3d at 857; *Casey*, 349 S.W.3d at 829–30; *Martin,* 335 S.W.3d at 872–73. The trial court did not err in so instructing the jury. Appellant's fourth issue is overruled.

### 2. *Conduct Not Alleged in the Indictment*

In his fifth and sixth issues, appellant complains that the jury charge authorized conviction for conduct that was not alleged in the indictment. In particular, appellant contends the charge authorized conviction for continuous sexual abuse of a young child based on touching S.T.'s breast (issue five) and anal penetration (issue six). We are not persuaded by this argument.

In the abstract portion of the charge, the jury was instructed that "acts of sexual abuse" means "intentionally or knowingly committing Indecency with Child and/or Aggravated Sexual Assault of a Child." Sexual contact was defined as "any touching of the anus, breast, or any part of the genitals, including touching through the clothing, of another person with intent to arouse of gratify the sexual desire of any person." The charge also explained that aggravated sexual assault against a child occurs when a person:

> Intentionally or knowingly causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor, or causes the contact or penetration of the anus or female sexual organ of a child by any means, or causes the contact or penetration of the

–11–

mouth of the child by the sexual organ of another person, including the actor, and at the time of the offense the child is younger than 14 years of age.

The application paragraph, however, tracked the indictment.[1] Specifically, the jury was instructed:

> Now, bearing in mind the foregoing instructions, if you find and believe from the evidence, beyond a reasonable doubt, that the defendant . . . on or about the 1st day of July, A.D. 2009, in the County of Dallas and State of Texas, did then and there, intentionally or knowingly, during a period that was 30 or more days in duration, when the defendant was 17 years of age or older, commit two or more acts of sexual abuse against [S.T.], a child younger than 14 years of age, hereinafter called complainant, namely by the contact between defendant's hand and complainant's genitals with the intent to arouse or gratify the sexual desire of defendant, or by contact between the hand of the complainant and the genitals of the defendant with the intent to arouse or gratify the sexual desire of defendant, or by the penetration of the complainant's female sexual organ by the defendant's finger, or by the penetration of the complainant's female sexual organ by the defendant's sexual organ, or by the contact between the mouth of the defendant and the female sexual organ of the complainant, or by the contact or penetration of the mouth of the complainant by the sexual organ of the defendant, or by the penetration of the female sexual organ by an object, to wit: a sex toy, then you will find the defendant guilty of the offense of Aggravated Sexual Assault, as charged in the indictment.

The application paragraph is the "heart and soul" of the jury charge. *See Vasquez v. State,* 389 S.W.3d 361, 367 (Tex. Crim. App. 2012). As the court of criminal appeals has observed, "[i]t is the application paragraph of the charge, not the abstract portion, that authorizes a conviction." *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012). As the court has recently explained, this means that "the application paragraph is what, as a practical manner, authorizes the jury to convict but is not necessarily determinative of what legally authorizes a conviction. The application paragraph is what explains to the jury, in concrete terms, how to apply the law to the facts of the case." *Yzaguirre v. State*, 394 S.W.3d 526, 530 (Tex. Crim. App. 2013).

---

[1] With the exception of the typographical error discussed in connection with appellant's third issue.

–12–

In the instant case, although the abstract portion of the charge included the full statutory definitions of "sexual contact" and "aggravated sexual assault of a child," the application paragraph properly directed the jury only to the acts of sexual abuse authorized by the indictment, and did not authorize conviction for touching S.T.'s breast or anal penetration. Therefore, even if the instructions were erroneous, we cannot conclude appellant suffered egregious harm. *See Patrick v. State*, 906 S.W.2d 481, 493 (Tex. Crim. App. 1995) (holding no harm where application paragraph points jury to appropriate portions of the definitions). Appellant's fifth and sixth issues are overruled.

### 3. *Failure to Give Instruction*

In his second issue, appellant argues the trial court erred in failing to instruct the jury that any sexual abuse after S.T.'s fourteenth birthday was irrelevant. Specifically, appellant complains that the charge failed to specify that the evidence concerning the activity at the hotel after S.T.'s fourteenth birthday could not support a conviction. Appellant also claims the charge instructed the jury that S.T. only had to be younger than seventeen at the time of the alleged predicate offense. The State responds that appellant not only failed to object, but expressly contributed to the crafting of the issue about which he now complains. According to the State, appellant should be estopped from complaining about the issue on appeal. In the alternative, the State argues the charge was not erroneous. We decline the State's invitation to apply estoppel, but agree the charge was not erroneous.

Appellant's argument is premised in part on the inclusion of the statutory definition of a "child" in the abstract portion of the charge. In particular, the court instructed the jury that a "child" is a person younger than seventeen years of age. *See* TEX. PENAL CODE ANN. §§ 21.02(a); 22.011(c)(1) (West 2011). The abstract portion of the charge also provided the statutory language for the offenses of indecency with a child and aggravated sexual assault, and explained

that an indecency offense applies to children younger than seventeen, and aggravated sexual assault of a child applies to children younger than fourteen. *See* TEX. PENAL CODE ANN. §§ 22.11(a); 22.021(2)(B) (West 2011).

Significantly, however, the charge also instructed that appellant was charged with continuous sexual abuse of a child, an offense which occurs "if at the time of the commission of each of the acts of sexual abuse . . . the victim is a child younger than 14 years of age." Moreover, the application paragraph instructed the jury that they were required to find beyond a reasonable doubt that S.T. was "a child younger than 14 years of age." Therefore, read as a whole, the charge properly restricted the sexual abuse to that which occurred before S.T.'s fourteenth birthday.

Appellant admits the State is not required to prove that an offense was committed on or about the date alleged in the indictment, and can prove the offense was committed on any date prior to the return of the indictment and within the period of limitations. *See Klein v. State*, 273 S.W.3d 297, 304 n.5 (Tex. Crim. App. 2008). Yet appellant insists that even if the charge correctly stated the law, "it still should have expressly instructed that [a]ppellant's alleged conduct at the motel would not support a conviction since [S.T.] was already 14." Relying on *Martin v. State*, 335 S.W.3d 867, 875 (Tex. App.—Austin 2011, pet ref'd), and *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011), appellant contends the charge is fundamentally defective because it is inaccurate and omits an important portion of the law applicable to the case. Appellant's reliance is misplaced.

The problem in both *Martin* and *Taylor* was that nothing in the charge limited the chronological perimeter of what the jury could consider. The charge in this case includes such limitations.

We have already observed that the application paragraph properly limited the jury's consideration to acts of sexual abuse that occurred before S.T. was fourteen. Appellant, however, seems to focus on the court's instruction as to the nonbinding nature of the dates of the offense. Specifically, the instruction reads:

> You are instructed that the State is not required to prove the exact date alleged in the indictment, but may prove the offense, if any, to have been committed at any time after September 1, 2007 and prior to the return date of the indictment and that "on or about the 1st day of July 2009" as used herein means any date after September 1, 2007 and before April 23, 2010.[2]

As set forth previously, it is not error to instruct the jury as to the nonbinding nature of the date of an offense. *See Martin*, 335 S.W.3d at 873. This is particularly true since the instruction was qualified by the court's further instruction requiring the jury to find that the sexual abuse occurred when S.T. was under fourteen years of age. *See id.* at 874. As the *Martin* court observed, "no error is presented if the trial court's charge qualified the instruction regarding the nonbinding nature of the alleged dates by otherwise informing or requiring the jury to find that the offense was committed after . . . the effective date of the statute and before complainant's fourteenth birthday." *Id.*

In addition, although the jury could not properly consider the conduct that occurred at the hotel after S.T.'s fourteenth birthday as a predicate act of sexual abuse, the conduct was admissible as to S.T.'s and appellant's state of mind and the relationship between the two. *See id.* at 876. In this regard, the jury was instructed:

> You are further instructed that if there is any testimony before you in this case regarding other crimes, wrongs, or acts committed by [appellant] against [S.T.], you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that [appellant] committed such crimes, wrongs, or other acts against [S.T.] and then you may only consider said testimony for the purpose of its bearing, if any, on the state

---

[2] During the charge conference, appellant specifically requested the inclusion of these "book-end dates between 2007 and the date of the indictment."

of mind of [appellant] and [S.T.] and the previous and subsequent relationship of [appellant] and [S.T.].

In the absence of evidence to the contrary, we presume the jury followed the court's charge. *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). Because the charge restricted the jury's consideration of predicate acts to those that occurred before S.T. was fourteen, we conclude the charge did not erroneously authorize the jury to ignore the age element of the offense or rely on acts of sexual abuse that occurred after S.T. was fourteen years of age. Appellant's second issue is overruled.

### 4. *Aggravated Sexual Assault*

In his third issue, appellant maintains the trial court erred in submitting aggravated sexual assault as the "proposed offense of conviction." The State responds that this typographical error did not cause appellant egregious harm. We agree with the State.

Appellant was charged with continuous sexual abuse of a young child. But the final sentence of the application paragraph reads "then you will find the defendant guilty of the offense of *aggravated sexual assault* as charged in the indictment." (Emphasis added).[3] Thus, there is no question the charge was erroneous. Having so concluded, we next consider whether appellant suffered egregious harm.

Charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008). To determine whether jury-charge error is egregious, we consider the entirety of the jury charge itself, the evidence, including the contested issues and weight of the probative evidence, the arguments of counsel, and any other relevant information

---

[3] The application paragraph is set forth in its entirety in an earlier section of this opinion.

revealed by the record of the trial as a whole. *Olivas v. State*, 202 S.W.3d 137, 146 (Tex. Crim. App. 2006).

Here, the jury charge read as a whole clearly informed the jury that appellant was charged with continuous sexual abuse of a child. In addition to the definition of the offense in the abstract section of the charge, other instructions referenced the offense with which appellant was charged. For example, one instruction specified that "to find the defendant guilty of the offense of continuous sexual abuse of a young child, you are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant." The application paragraph correctly recited the statutory elements of continuous sexual abuse of a young child. And the verdict form provided a space to find appellant guilty of "continuous sexual abuse of a child."

At trial, the State presented evidence of numerous acts of sexual abuse, which included both indecency with a child and aggravated sexual assault of a child. There is no indication that the jury was confused by the evidence or the court's instructions. Indeed, when the jury returned the verdict they reported that they found appellant guilty of continuous sexual abuse of a young child. And there is nothing else in the record—argument of counsel, contested issues, or other relevant information—to suggest that this typographical error caused any harm at all. Therefore, considering the entire record, we conclude the charge error did not affect the very basis of the case, deprive defendant of a valuable right, or vitally affect a defensive theory. Appellant's third issue is overruled.

### 5. *Cumulative Error*

In his seventh issue, appellant contends that the alleged charge errors constitute cumulative error and he is entitled to a new trial. As the court of criminal appeals has observed, however, "[w]e are aware of no authority holding that non-errors may in their cumulative effect cause error." *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999). This

observation is particularly poignant here. We have concluded that there was no error as to four of the five complained-of charge errors, and as to the remaining error, there was no egregious harm. Thus, there is no cumulative error. Appellant's seventh issue is overruled.

## C. *The Verdict*

In his eighth issue, appellant argues the verdict was ambiguous as to the offense for which appellant was convicted. To preserve an alleged error for appeal, a timely and specific objection must be made. *See* TEX. R. APP. P. 33.1(a). When the trial court read the verdict convicting appellant of continuous sexual abuse of a young child, appellant did not object. Therefore, this issue has not been preserved for our review. *See Shelton v. State*, 441 S.W.2d 536, 538 (Tex. Crim. App. 1969). Appellant's eighth issue is overruled.

## D. *Denial of the Motion for Mistrial*

In his ninth and tenth issues, appellant complains the trial court erred in refusing to grant his motion for a mistrial. Specifically, appellant complains the trial court erred in refusing a mistrial when the State discussed anal penetration during opening statement without notice to appellant (issue nine), and erred in denying a mistrial when the State introduced evidence of anal penetration without notice (issue ten). The State responds that appellant failed to preserve these complaints for our review. We agree with the State.

During opening statement, the State told the jury, "He taught her what anal sex was by putting his penis inside of her anus. He taught her oral sex, he taught her sex toys, how to use them, what is what, what does what." Appellant's counsel objected, "There's nothing in the indictment that was just read concerning anal sex." The trial court overruled the objection and denied the request for a mistrial. Appellant's counsel then stated, "I submit that its improper argument, opening argument, Your Honor. I respectfully take exception to her opening argument."

–18–

On appeal, appellant asserts the trial court erred in denying the motion for mistrial because the State failed to give notice of an extraneous offense, and a curative instruction would not have been adequate to mitigate the harm.

To preserve a complaint for review on appeal, a party must make a timely, specific request, objection, or motion to the trial court that states the grounds for the ruling sought, and the trial court must rule on the request, objection, or motion. TEX. R. APP. P. 33.1(a); *Gutierrez v. State*, 36 S.W.3d 509, 510 (Tex. Crim. App. 2001). Furthermore, the complaint on appeal must comport with the trial objection. *See Swain v. State*, 181 S.W.3d 359, 367 (Tex. Crim. App. 2005). Stated otherwise, the complaint must be "essentially the same." *Clarke v. State*, 270 S.W.3d 573, 580–83 (Tex. Crim. App. 2008).

Appellant's trial objection was that the reference to anal penetration was improper argument and was not included in the indictment. He now argues he was not provided with notice of an extraneous offense. Because appellant's trial objection does not comport with his argument on appeal, the alleged error has not been preserved for our review. *See* TEX. R. APP. P. 33.1. Appellant's ninth issue is overruled.

Appellant also contends the trial court erred in failing to grant a mistrial when S.T. testified about anal sex. During trial, S.T. testified that appellant took her to a hotel to have sex. During the testimony, the following exchange occurred:

> **Prosecutor:** Did anything different happen in that hotel that had happened before, from what had happened before?
>
> **S.T.:** Yes, ma'am.
>
> **Prosecutor:** What happened?
>
> **S.T.:** He put his-
>
> **Defense Counsel:** Objection, leading, you honor.
>
> **Judge:** Objection Overruled

**S.T.**: He put his penis in my anus.

Appellant did not object until much later in the testimony, after the parties had returned from lunch. At that time, appellant's counsel moved for a mistrial, arguing that the testimony about the anal sex violated the court's order in limine concerning extraneous offenses. The motion was denied.

Because the record reflects that appellant did not timely object to the testimony about which he now complains, the issue has not been preserved for our review. *See* TEX. R. APP. P. 33.1. Appellant's tenth issue is overruled.

**E.** *Denial of the Motion to Quash the Indictment*

In issues eleven, twelve, thirteen, and fourteen, appellant argues the trial court erred in denying his motion to quash the indictment because article 21.02 violates the unanimity requirement of the United States and Texas Constitutions and deprives him of due process and due course of law.[4] We have previously rejected these arguments in connection with the jury charge, and for the same reasons, reject them now. *See Render*, 316 S.W.3d at 858; *see also State v. Espinoza*, No. 05-09-01260-CR, 2101 WL 2598982, at *5 (Tex. App.—Dallas June 30, 2010, pet. ref'd) (not designated for publication) (rejecting argument under U.S. and Texas Constitutions). Issues eleven, twelve, thirteen, and fourteen are overruled.

**F.** *Modification of the Judgment*

The judgment recites that the jury assessed punishment. In a cross-point, the State requests that we modify the judgment to reflect that the trial court assessed punishment. An appellate court has the power to modify incorrect judgments when the necessary data and information is available to do so. *See* TEX. R. APP. P. 43.2(b); *Abron v. State*, 997 S.W.2d 281,

---

[4] Appellant moved to quash the indictment because the jurors would not be required to agree unanimously on the specific acts of sexual abuse or the specific times these acts occurred.

282 (Tex. App.—Dallas 1998, pet. ref'd); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993).

Here, the record reflects that appellant elected to have the court assess punishment and the jury was discharged following the return of their verdict. The record further reflects that the trial judge heard punishment evidence and assessed punishment. Therefore, we modify the judgment to reflect that the court assessed punishment in this case.

## III. CONCLUSION

Appellant's fourteen issues are overruled. We modify the trial court's judgment to reflect that the trial court assessed punishment. As modified, the judgment is affirmed.

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
120377F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MANUEL LEIS PEREZ

No. 05-12-00377-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 3, Dallas County, Texas
Trial Court Cause No. F10-31001-J.
Opinion delivered by Justice FitzGerald.
Justices Bridges and Myers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** to reflect that the trial court assessed punishment.
As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 26th day of August, 2013.

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE