Opinion filed March 12, 2015



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00051-CR
_____

## ERIC ALFONSO SERRANO, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 1
Tarrant County, Texas
Trial Court Cause No. 1277220D**

## M E M O R A N D U M   O P I N I O N

The jury found Eric Alfonso Serrano guilty of the offense of continuous sexual abuse of a child. The victims were Appellant's two daughters, S.S. and A.S. Both were under the age of fourteen at the times that Appellant sexually abused them. The jury assessed punishment at confinement for a term of forty-three years, and the trial court sentenced him accordingly. In three issues, Appellant complains of jury charge error, challenges the sufficiency of the evidence, and challenges the denial of a motion for mistrial. We affirm.

Appellant married his wife C.S. in 1998; C.S. was sixteen years old. Appellant and C.S. ultimately had five daughters together. Appellant had been in the military. While he was in the military, Appellant had been deployed to both Iraq and Afghanistan. C.S. testified that Appellant totally changed after he was deployed. According to C.S., Appellant was "mean," "hated" women, and treated their daughters like soldiers.

The events made the basis of the charges in this case first came to light at a family get-together for a Fourth of July celebration. On this particular occasion, C.S.'s sister, F.R., invited S.S. to spend the night with her. C.S. told S.S. that it would be okay to spend the night with her Aunt F.R., but Appellant intervened and told them that S.S. could not spend the night with her. Appellant gave no explanation other than "that's [his] word." C.S. testified that she thought Appellant seemed jealous and that she could not understand why he refused. Contrary to Appellant's expressed wishes, C.S. gave permission anyway. F.R. insisted on finding out why Appellant would not allow the visit. She said to him, "Are you going to . . . are you going to touch the girls like you did to me?" S.S. began to cry and told the others that Appellant had been "touch[ing]" her and that "it's been going on for a while." F.R., C.S., and the girls left.

That night, C.S. talked to each of the girls. A.S. cried and told C.S the things that Appellant had done to her and the things that Appellant had made her do.

C.S. called the police. After she talked to a detective, C.S. took S.S. and A.S. to Alliance for Children for a forensic interview. Later, she took them to Cook Children's Medical Center for a sexual assault examination.

The State charged Appellant with the offense of continuous sexual abuse of children and alleged that he had committed two or more acts of sexual abuse against his children between July 2009 and June 2011. The State specifically

2

charged that Appellant had committed one act of sexual abuse against S.S. and had committed five acts of sexual abuse against A.S. Appellant was also charged with the lesser included offense of aggravated sexual assault of S.S. After a trial, the jury convicted Appellant of continuous sexual abuse of his children as alleged in count one of the indictment.

In his first issue, Appellant argues: "The Charge to the Jury Improperly Combined Separate Alleged Offenses against each Alleged Victim into one General Charging Paragraph thereby forcing the Jury to Convict the Appellant as to Both Alleged Victims." During the charge conference, Appellant objected to the use of "or" between the allegation involving S.S. and the allegations involving A.S. because "and" had been used in the indictment. On appeal, Appellant argues that "[t]he charging instrument should have used the disjunctive form, but instead it used the and/or format which gave the State two different ways to prove count one without having to prove that both children were abused during this time frame."

It is well settled that the trial court is required to instruct the jury on the law applicable to the case. TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). And, although a trial court may not submit "separate offenses" to the jury in the disjunctive, it may submit alternative manner and means of committing the same offense in the disjunctive. *Jefferson v. State*, 189 S.W.3d 305, 311 (Tex. Crim. App. 2006); *Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005) ("The phrase 'manner or means' describes *how* the defendant committed the specific statutory criminal act.").

A person who is seventeen years of age or older commits the offense of continuous sexual abuse of a child younger than fourteen if, "during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more

3

victims." TEX. PENAL CODE ANN. § 21.02(b) (West Supp. 2014). The statute specifically provides that "members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed. The jury must agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse." *Id.* § 21.02(d).

The element upon which the jurors must unanimously agree is that the accused committed two or more acts of sexual abuse during the specified period of time. *McMillian v. State*, 388 S.W.3d 866, 872 (Tex. App.—Houston [14th Dist.] 2012, no pet.). "[T]wo or more acts of sexual abuse" constitutes a single element that can be established by proof of more than one "act of sexual abuse" that the statute defines as a means of committing the offense. *See* PENAL § 21.02(b)–(c). An "act of sexual abuse" is defined as "any act that is a violation of one or more of the following penal laws." *Id.* § 21.02(c). The list includes the offense of "aggravated sexual assault under Section 22.021." *Id.* § 21.02(c)(4). We note that Appellant does not challenge the constitutionality of Section 21.02, but even so, several appellate courts in Texas have held that the statute does not violate the constitutional right to a unanimous jury verdict. *See Pollock v. State*, 405 S.W.3d 396, 405 (Tex. App.—Fort Worth 2013, no pet.); *see also McMillian*, 388 S.W.3d 866; *Kennedy v. State*, 385 S.W.3d 729 (Tex. App.—Amarillo 2012, pet. ref'd); *Casey v. State*, 349 S.W.3d 825 (Tex. App.—El Paso 2011, pet. ref'd); *Reckart v. State*, 323 S.W.3d 588 (Tex. App.—Corpus Christi 2010, pet. ref'd); *Render v. State*, 316 S.W.3d 846 (Tex. App.—Dallas 2010, pet. ref'd); *Jacobsen v. State*, 325 S.W.3d 733 (Tex. App.—Austin 2010, no pet.).

The indictment in this case tracks the language of the statute. The State alleged that Appellant, "on or about the 1st day of July 2009 THROUGH THE 1ST DAY OF JUNE, 2011, DID INTENTIONALLY OR KNOWINGLY, DURING A

4

PERIOD OF TIME THAT IS 30 DAYS OR MORE IN DURATION, COMMIT TWO OR MORE ACTS OF SEXUAL ABUSE."  The State further alleged six different acts of sexual abuse; it alleged that Appellant had committed aggravated sexual assault against S.S. by contacting her sexual organ with his mouth "and" aggravated sexual assault against A.S. by digitally penetrating her sexual organ "and/or" by digitally penetrating her anus "and/or" by contacting her sexual organ with his mouth "and/or" by contacting her sexual organ with his sexual organ "and/or" by causing her mouth to contact his sexual organ.  In the charge, the trial court asked the jury to determine whether Appellant intentionally or knowingly, "during a period of time that is 30 days or more in duration, commit[ted] two or more acts of sexual abuse."  While the "acts of sexual abuse" against S.S. and A.S. were conjunctively alleged in the indictment, they were alleged in the disjunctive in the charge, and the trial court continued the use of "and/or" for the alternative allegations pertaining to A.S.

Appellant recognizes that "the State may indict conjunctively and then charge disjunctively," but he argues that using "the and/or format" rather than the disjunctive is somehow different and that it "gave the State two different ways to prove count one without having to prove that both children were abused during this time frame."  At trial, Appellant argued that, because "and" had been used in the indictment between the allegation pertaining to S.S. and the five allegations pertaining to A.S, the jury should have been required to find an act of abuse against each child and should not have been authorized to base their verdict on a finding of two acts of sexual abuse against A.S.

We recognize that the use of a slash or a diagonal mark between "and" and "or" can cause confusion because its function may be either conjunctive or disjunctive.  In this case, however, either would be an acceptable form in which to charge the jury.  Appellant cites no authority for his position that pleading in the

5

conjunctive and charging in the disjunctive is not permitted for the offense of continuous sexual assault of children. *See Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991) ("[A]lthough the indictment may allege the differing methods of committing the offense in the conjunctive, it is proper for the jury to be charged in the disjunctive.").

We find that the trial court did not err when it charged the jury in the disjunctive. First, the element upon which the jurors must unanimously agree is the commission of two or more acts of sexual abuse during the specified period of time. *See McMillian*, 388 S.W.3d at 872. Second, the offense requires two acts of sexual abuse during a certain period, and it is irrelevant that the acts were committed against more than one victim. *See* PENAL § 21.02(b)(1). Finally, because the allegations pertaining to S.S. and A.S. were alternative manner and means of committing the offense of continuous sexual abuse, it was permissible for the trial court to charge in the disjunctive. *See Kitchens*, 823 S.W.2d at 258.

Appellant complains that, while "[p]rior case law certainly permits the concept of multiple acts regarding a single child," the trial court's charge in "this case binds all acts into one inseparable series of events, not allowing for any incredulity as to either child." Appellant argues that "[t]he jury could hypothetically have decided that A.S.'s testimony was not at all credible–but the verdict form, which allowed for the conviction as to count two regarding S.S., did not allow for the acquittal on count one without the entire case being thrown out" and that "the verdict form entangled the offenses in a manner that could not have been resolved in the Appellant's favor."

We construe Appellant's argument as a further complaint that the jury should have been required to find that Appellant committed acts of sexual misconduct against both children and, if not, should have been required to enter a verdict of not guilty. However, the State was entitled to a charge on the lesser

6

included offense of aggravated sexual assault of S.S. because the proof for continuous sexual abuse in this case included the proof necessary to establish aggravated sexual assault and because, if the jury disbelieved A.S.'s testimony, there was some evidence that would have allowed the jury to reasonably find that, if Appellant was guilty, he was guilty only of the lesser included offense. *See Hall v. State*, 225 S.W.3d 524, 536 (Tex. Crim. App. 2007).

As discussed above, the State alleged in count one that Appellant committed the offense of continuous sexual abuse by intentionally or knowingly committing two or more acts of sexual abuse on or about July 1, 2009, through June 1, 2011, including committing aggravated sexual assault against S.S. by contacting her sexual organ with his mouth. The trial court instructed the jury that, if it found beyond a reasonable doubt that Appellant committed the offense as charged in count one of the indictment, it was to find him guilty of continuous sexual abuse of children. The trial court further instructed the jury that, if it had a reasonable doubt about Appellant's guilt in count one, it was to then consider whether Appellant committed the offense of aggravated sexual assault against S.S. as charged in count two of the indictment. In count two of the indictment, it was alleged that Appellant committed the offense of aggravated sexual assault against S.S. by intentionally or knowingly causing the child's sexual organ to contact Appellant's mouth. If the jury had a reasonable doubt about Appellant's guilt as to count two, the jury was required to find Appellant not guilty. The jurors, therefore, were provided with three choices in the verdict form: guilty as charged in count one, guilty as charged in count two, or not guilty at all. The trial court properly submitted the three options available to the jury. Appellant's first issue is overruled.

In his second issue on appeal, Appellant challenges the sufficiency of the evidence. We review a challenge to the legal sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v.*

7

*State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We defer to the jury as the sole judge of the witnesses' credibility and the weight to be given their testimony. *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013); *Brooks*, 323 S.W.3d at 899 (citing *Jackson*, 443 U.S. at 319, 326); *see* CRIM. PROC. art. 36.13 (West 2007), art. 38.04 (West 1979).

Appellant asserts that the evidence is insufficient because the credibility of both children was "[i]nordinately [s]uspect." Appellant argues that S.S.'s testimony "should give the [c]ourt some pause" because the details of the events as related by her in her outcry statements were different from her trial testimony. He further argues that A.S.'s testimony is "even more problematic" because "her persistence in hewing to the obviously wrong timeline renders her entire testimony implausible" and because her "medically and factually impossible" description of Appellant's penis "does nothing to dispel the notion that she could have been repeating a rehearsed story, or could have witnessed adult pornography." The State argues that it was the jury's role to reconcile any conflicts in the testimony and that the evidence is sufficient to support the conviction. We agree with the State.

Courts do not expect child victims to testify with the same clarity and ability as would be expected of a capable adult. *Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990). "To expect such testimonial capabilities of children would be to condone, if not encourage, the searching out of children to be the

8

victims of crimes such as the instant offense in order to evade successful prosecution." *Id.*

The State alleged that, on or about July 1, 2009, through June 1, 2011, Appellant committed two or more acts of sexual abuse against his two daughters—specifically, six different acts of aggravated sexual assault against S.S. and A.S. A.S. testified that the first incident with her dad occurred when C.S. was hospitalized to receive treatment for stomach pains. C.S. confirmed that she was hospitalized in February 2011 after complications from gallbladder surgery. The State specifically alleged that Appellant caused the penetration of the anus of A.S. by inserting his finger into her anus. A.S. testified that, while her mother was in the hospital, she slept with Appellant in his bed and that, when she woke up, Appellant "was trying to stick his finger in [her] behind side." The prosecutor asked A.S. what she used her "behind side" for, and A.S. said, "To go poop."

The State also alleged that Appellant caused the female sexual organ of A.S. to contact the sexual organ of Appellant. A.S. testified that, on another occasion while her mother was out of the house, Appellant told her to go to his bedroom and pull down her pants. She said that Appellant "pulled down his pants, and then he tried to stick his middle part in mine." A.S. explained that her middle part is what she calls the part where she pees from. A.S. said that Appellant's "middle part" only went inside her middle part "[a] little bit."

The State also alleged that Appellant caused the penetration of the female sexual organ of A.S. by inserting his finger into her female sexual organ. A.S. testified that Appellant stuck his finger inside her middle part.

Further, the State alleged that Appellant caused the mouth of A.S. to contact the sexual organ of Appellant. A.S. testified that on another occasion, as she was watching a movie with her sisters, Appellant "took [her] to the restroom" and locked the door. Appellant pulled down his pants, put "cherry Sponge Bob" yogurt

on his penis, and told A.S. to "suck it." Appellant additionally put chocolate on his penis and again told A.S. to "suck it." A.S. said that she did as she was told and that "[s]ome gooey white stuff came out." C.S. testified that, when she first talked to A.S. about what Appellant had done to her, A.S. told her that Appellant "made her lick his middle part." C.S. also recalled that A.S. told her that "white stuff" came out and that Appellant made her "spit it out."

Additionally, the State alleged that Appellant caused the female sexual organ of A.S. to contact the mouth of Appellant. A.S. testified that, on yet another occasion, Appellant woke her up while she was asleep on the couch. He said to her, "Let me suck your middle part"; she said that she "just let him." A.S. also testified that she had heard her dad come into the bedroom that she shared with S.S. and say to S.S., "[S.S], let me suck your middle part." S.S. replied, "Leave me alone."

Finally, we consider the State's allegation that Appellant caused the female sexual organ of S.S. to contact the mouth of Appellant. S.S. testified that she called "the part where you pee from" her "cola" and that, when they lived in Fort Worth, Appellant "took off [her] pants and then he just started to lick [her] cola." S.S. testified that Appellant had offered to buy her an iPhone and take her to Six Flags if she would let him "do it" but that she always told him "no" after the first incident.

We have reviewed the record in the light most favorable to the verdict and have given proper deference to the jury's credibility determinations, and we conclude that a rational jury could have found beyond a reasonable doubt that Appellant committed two or more acts of sexual abuse on or about the specified periods of time. It is the jury's function to determine what weight to assign to the evidence, and Appellant cannot succeed on appeal by complaining that the jury

resolved the evidence against him. *See Winfrey*, 393 S.W.3d at 768. Appellant's second issue is overruled.

In his third issue, Appellant complains that the State engaged in improper jury argument and that the trial court erred when it denied his motion for mistrial based on the improper argument. The State counters that the trial court's instruction to disregard the comment was sufficient to cure any harm that might have resulted. Therefore, the State argues that the trial court did not abuse its discretion when it denied Appellant's request for a mistrial.

We review a trial court's denial of a motion for mistrial for an abuse of discretion. *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009). When we review a ruling for an abuse of discretion, we do not substitute our judgment for that of the trial court but, rather, decide whether its decision was arbitrary or unreasonable. *McQuarrie v. State*, 380 S.W.3d 145, 150 (Tex. Crim. App. 2012). A trial court abuses its discretion "if no reasonable view of the record could support its ruling." *Okonkwo v. State*, 398 S.W.3d 689, 694 (Tex. Crim. App. 2013).

During the State's closing argument, the prosecutor told the jury that A.S.'s and S.S.'s credibility had "been judged time and time again" and that the jury "had an opportunity to judge their credibility as well." The prosecutor then said, "I'm proud to stand before you and vouch for their credibility because they have done what was asked." Appellant objected and argued that the prosecutor was attempting to inject his personal opinion. The trial court sustained the objection, and it instructed the jury to "disregard the last statement by counsel." The trial court denied Appellant's request for a mistrial.

When a trial court sustains an objection to an argument and instructs the jury to disregard the argument, but denies a motion for mistrial, we assume, without deciding, that the argument was improper, and we ask only whether the court

abused its discretion when it denied the motion for mistrial. *Hawkins v. State*, 135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004). "A mistrial is the trial court's remedy for improper conduct that is 'so prejudicial that expenditure of further time and expense would be wasteful and futile.'" *Id.* at 77 (quoting *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). "Instructions to the jury are generally considered sufficient to cure improprieties that occur during trial," and there is a general presumption "that a jury will follow the judge's instructions." *Gamboa*, 296 S.W.3d at 580. Although we must assume that the argument was error in this case, we note that, "[i]n order to constitute reversible error, the jury argument must be extreme or manifestly improper, or inject new and harmful facts into evidence." *McKay v. State*, 707 S.W.2d 23, 36 (Tex. Crim. App. 1985).

To determine whether an improper comment warrants a mistrial, we must consider "(1) severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks), (2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge), and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction)." *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).

Appellant focuses on the first and third elements that we are to review and argues that the misconduct was severe because, "other than commenting on the Appellant's failure to testify, a personal voucher for the credibility of witnesses in a child abuse case, a case without DNA or other forensic or medical evidence, is arguably the most harmful prosecutorial no-no that the defense can endure." He maintains that, because this case was "replete with witness embellishments and the children['s] changing testimony, the prosecutor's personal 'warranty of credibility' could well have tipped the balance against the Appellant."

Appellant cites *Sanders v. State*, 191 S.W.3d 272, 275 (Tex. App.—Waco 2006, pet. ref'd), to support his contention that "reversal is required." However,

the trial court in *Sanders* overruled the objection to an allegedly improper comment. Therefore, the issue there, and in the cases cited there, was whether the comment was improper and not whether the comment was so improper or so severe that a mistrial was warranted. *See Sanders*, 191 S.W.3d at 275; *see also Menefee v. State*, 614 S.W.2d 167 (Tex. Crim. App. 1981); *Puckett v. State*, 330 S.W.2d 465 (Tex. Crim. App. 1959); *Flores v. State*, 778 S.W.2d 526 (Tex. App.—Corpus Christi 1989, no pet.). Additionally, the court of appeals concluded in *Sanders* that the argument was proper, and it affirmed the conviction. *Id.* at 276.

The State argues that its comment was not extreme because a fair reading of the record shows that "the prosecutor was trying to summarize his argument that the girls' willingness to go through such an intensive and intrusive process should weigh in favor of their credibility." According to the State, a mistrial was not warranted because the prosecutor "did not state or imply that he was relying on any special knowledge or experience in asserting that the girls were credible witnesses." Further, the State contends that it explained the basis for the opinion and that the basis was supported by the record.

Before the State made the comment about credibility, the prosecutor had summarized the process that the girls had endured since the initial outcry, including talking to police officers, talking to officials from child protective services, giving a forensic interview, and submitting to a physical sexual assault examination. Then, the prosecutor told the jury that he was proud to vouch for their credibility "because they have done what was asked." After the trial court sustained the objection, issued a curative instruction, and denied Appellant's motion for mistrial, the prosecutor continued as follows:

> They have done what has been asked from them from day one up until when they took the stand. And now we are asking for you to find him guilty for exactly what he did to them. Doesn't it say -- doesn't it speak volumes about the girls that they wanted to see him in

custody? Despite what he did to them, they still love him. Despite the acts of abuse, they still love him. Speaks volumes about their credibility. We're asking you to find him guilty of Count 1 for continuously abusing [S.S.] and [A.S.], his daughters. Thank you.

The prosecutor summarized the evidence that showed all that S.S. and A.S. had endured since their initial outcries, and he explained that that was the reason he vouched for their credibility. Because the jury could draw its own inferences from these facts, we cannot conclude that the prosecutor's attempt to inject his personal opinion, if improper, was so severe that a curative instruction was insufficient or that it was so prejudicial that further time and expense would have been futile. *See Hawkins*, 135 S.W.3d at 76–77. Accordingly, we cannot conclude that the trial court abused its discretion when it denied the motion for mistrial. Appellant's third issue is overruled.

We affirm the judgment of the trial court.


JIM R. WRIGHT

CHIEF JUSTICE


March 12, 2015

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

14