PD-1021-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 8/31/2015 11:50:57 PM
Accepted 9/1/2015 1:38:12 PM
ABEL ACOSTA
CLERK

# CAUSE NUMBER PD-1021-15

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

# TIMOTHY EDWARD WHITINGTON,

**Petitioner,**

**vs.**

# THE STATE OF TEXAS,

**Respondent.**

---

**SEEKING REVIEW OF THE EIGHTH COURT OF APPEALS' JUDGMENT AND OPINION IN CAUSE NUMBER 08-13-00102-CR**

---

# PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

September 1, 2015

ABEL ACOSTA, CLERK

**WM. REAGAN WYNN**
**SBN: 00797708**

**KEARNEY | WYNN**
**ONE MUSEUM PLACE**
**3100 WEST 7TH STREET, SUITE 420**
**FORT WORTH, TEXAS 76107**
**(817) 336-5600**
**(817) 336-5610 (fax)**
**rwynn@kearneywynn.com**

**ORAL ARGUMENT IS REQUESTED**          **ATTORNEY FOR PETITIONER**

## IDENTITY OF JUDGE, PARTIES, AND COUNSEL

The trial court judge:      Hon. Ruben Gonzalez, Jr., Judge Presiding of the 432nd Judicial District Court

The parties to the trial court's judgment are:

Timothy Edward Whitington   Defendant

The State of Texas        Prosecution

Trial counsel were:

Hon. Randy Bowers       Defense Counsel
3505 Airport Freeway
Fort Worth, Texas 76111

Hon. Stephanie Patten        Defense Counsel
2101 Moneda
Fort Worth, Texas 76111

Hon. Eric Nickols        Prosecutor
Hon. Dale Smith        Prosecutor

Tarrant County District Attorney's Office
401 West Belknap Street
Fort Worth, Texas 76196
(817) 884-1400

Appellate counsel are:

Wm. Reagan Wynn       Petitioner
Kearney | Wynn
3100 West 7th Street, Suite 420
Fort Worth, Texas 76107
(817) 336-5600
(817) 336-5610 (fax)
rwynn@kearneywynn.com

Hon. Debra Windsor       State of Texas

Tarrant County District Attorney's Office
Appellate Section
Address

## TABLE OF CONTENTS

*IDENTITY OF JUDGE, PARTIES, AND COUNSEL* . . . . . . . . . . . . . . . . . . . . . . . i

*INDEX OF AUTHORITIES* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

*STATEMENT REGARDING ORAL ARGUMENT* . . . . . . . . . . . . . . . . . . . . . . . iv

*STATEMENT OF THE CASE* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

*STATEMENT OF PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . . . . . v

*QUESTION PRESENTED FOR REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*ARGUMENT* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.    THE COURT OF APPEALS ERRED BY HOLDING THAT THE APPLICATION OF THE CONTINUOUS SEXUAL ABUSE STATUTE TO CONDUCT OCCURRING PRIOR TO THE EFFECTIVE DATE OF THE STATUTE DID NOT AMOUNT TO AN *EX POST FACTO* VIOLATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        A.    The Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        B.    The Court of Appeals' Opinion . . . . . . . . . . . . . . . . . . . . . 4

        C.    Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*PRAYER* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION* . . . . . 11

*CERTIFICATE OF SERVICE* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Court of Appeals' Opinion and Judgment . . . . . . . . . . . . . . . . . . . . . . . Appendix 1

Court of Appeals Opinion on Rehearing . . . . . . . . . . . . . . . . . . . . . . . Appendix 2

## INDEX OF AUTHORITIES

CASES

CONSTITUTIONAL PROVISIONS, STATUTES, AND RULES

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS OF TEXAS:

COMES NOW *TIMOTHY EDWARD WHITINGTON*, Petitioner, by and through his attorney of record, WM. REAGAN WYNN, and pursuant to Rule 68, Texas Rules of Appellate Procedure, files this ***PETITION FOR DISCRETIONARY REVIEW***, and for such Petition would show this Court as follows:

### *STATEMENT REGARDING ORAL ARGUMENT*

This Petition challenges the court of appeals' resolution of Petitioner's ex post facto claim pertaining to trial court's actions that allowed him to be convicted of continuous sexual abuse based on conduct allegedly committed prior to the enactment and effective date of the statute. This case involves complicated and important legal issues that have never been squarely addressed by this Court and Petitioner respectfully submits that this Court should grant oral argument so that counsel for both sides may more fully present their positions and answer any questions this Court may have after preliminarily reviewing this case.

### *STATEMENT OF THE CASE*

Petitioner was convicted by a Tarrant County jury of continuous sexual abuse of a young child and sentenced to 50 years in prison without the possibility of parole. On appeal to this Court, Petitioner argued in his first point of error that his conviction

was obtained in violation of the *ex post facto* prohibition of both the federal and state constitutions because the jury was presented with evidence of acts prior to the effective date of the statute that could have formed the basis for the conviction. The Court of Appeals held that the *ex post facto* prohibition does not apply to judicial acts, only legislative acts, and affirmed the trial court's judgment.

### *STATEMENT OF PROCEDURAL HISTORY*

By an indictment filed May 31, 2012, Petitioner was charged with one count of Continuous Sexual Abuse of a Child and with four other counts alleging sexual performance by a child and indecency with a child by contact.[C.R. 6-7] This was a re-indictment of an indictment originally returned November 30, 2011.[C.R. 10-11]

On February 26, 2013, Petitioner was arraigned as to count one of the indictment alleging continuous sexual abuse and entered a plea of not guilty to that charge.[5 R.R. 5-6] Prior to jury selection, the State waived counts two through five of the Indictment.[5 R.R. 6] A jury was then selected,[5 R.R. 6-156] seated,[5 R.R. 156-57] and sworn.[5 R.R. 156]

On February 27, 2013, Count One of the Indictment was read in the presence of the jury and Petitioner entered a plea of "not guilty."[5 R.R. 15-16] Thereafter, trial on the merits commenced.[5 R.R. 16] After hearing testimony for more than two days, the court gave the case to the jury on March 1, 2013.[C.R. 103-15; 8 R.R. 61] The

jury found Petitioner guilty of the sole count of continuous sexual abuse as alleged in the Indictment.[C.R. 116; 8 R.R. 62]

The trial on punishment was then conducted on the afternoon of March 1, 2013. After hearing testimony from several witnesses, the court gave the case to the jury on the issue of punishment.[C.R. 120-21; 9 R.R. 116, 120] The jury assessed Petitioner's punishment at incarceration for 50 years .[C.R. 122; 9 R.R. 121]

The trial court entered its Judgment of Conviction by Jury in accordance with the jury's verdicts on March 1, 2013.[C.R. 426-28]

Petitioner timely filed his Notice of Appeal on March 1, 2013.[C.R. 133] The trial court certified that Petitioner has the right to appeal on March 1, 2013.[C.R. 132]

The Eighth Court of Appeals affirmed the trial court's judgment and sentence on April 24, 2015. *See Whitington v. State*, No. 08-13–00102-CR, slip op. (Tex. App.–El Paso April 24, 2015) (not designated for publication) (hereinafter "*Whitington I*").[1] After receiving an extension of time, Petitioner filed his Motion for Rehearing on June 10, 2015. On July 1, 2015, the court of appeals issued a written Opinion on Rehearing denying the Motion for Rehearing. *See Whitington v. State*,

---

[1] A copy of the Court of Appeals' Opinion is attached to this Petition as Appendix 1. *See* TEX. R. APP. P. 68.4(i).

No. 08-13-00102-CR, slip op. (Tex. App.–El Paso July 1, 2015) (op. on reh'g) (not designated for publication) (hereinafter "*Whitington II*").[2]

On August 11, 2015, this Court entered an order granting Petitioner's First Motion for Extension of Time to File Petition for Discretionary Review. Pursuant to the Order, this Petition is timely if filed in this Court on or before August 31, 2015.

---

[2] A copy of the Court of Appeals' Opinion on Rehearing is attached to this Petition as Appendix 2. *See* TEX. R. APP. P. 68.4(i).

## *QUESTION PRESENTED FOR REVIEW*

Did the court of appeals err by holding that the application of the continuous sexual abuse statute to conduct occurring prior to the effective date of the statute did not amount to an *ex post facto* violation?

## *ARGUMENT*

## I.

**THE COURT OF APPEALS ERRED BY HOLDING THAT THE APPLICATION OF THE CONTINUOUS SEXUAL ABUSE STATUTE TO CONDUCT OCCURRING PRIOR TO THE EFFECTIVE DATE OF THE STATUTE DID NOT AMOUNT TO AN *EX POST FACTO* VIOLATION.**

**A.      The Facts**

Petitioner was indicted for the offense of continuous sexual abuse allegedly committed against his son, E.[C.R. 6] The Indictment alleged that "on or about the 1st day of August 2008 through the 26th day of December, 2010," Petitioner "intentionally or knowingly, during a period of time that is 30 days or more in duration, commit two or more acts of sexual abuse . . ." against E.[C.R. 6] With regard to the "on or about" date allegation in the Indictment, the jury was instructed that they could find Petitioner guilty if they found beyond a reasonable doubt that he committed the two acts of sexual abuse at any time prior to May 31, 2012.

The evidence presented at trial revealed that E. was born in August 1999. [6 R.R. 133; 10 R.R. SX 34] E. started school shortly after he turned 5, which would have been in August 2004.[7 R.R. 25] In December 2010, at the time Petitioner was arrested, E. was 11 years old.[6 R.R. 84]

Evidence was presented from which jurors could have concluded that Petitioner committed acts of sexual abuse against E. starting at a time prior to August 2004. In particular, in his video-recorded interview, E. gave two different answers when asked about the first time his father touched his [E's] penis.[10 R.R. SX 34] Initially, E. claimed that when he was very young – before he started Kindergarten – Petitioner had shown him how to wash his penis.[10 R.R. SX 34] This would have been some time before August 2004. Also, E. described touching Petitioner's penis when E. was very little.[10 R.R. SX 34] Further, when he was first interviewed by the CPS worker and asked about touching, E. indicated that it had happened "a long time ago."[6 R.R. 248, 250] Additionally, throughout the interview, E. is very vague about dates and times of other alleged conduct and it would be possible to conclude that some of the alleged conduct occurred when E. was younger.

In his video-taped interview, Petitioner admitted to showering with E. when E. was 6 to 8 years old.[10 R.R. SX 33] E. Would have turned 6 in August 2005, 7 in August 2006, and 8 in August 2007.

The State produced evidence from which jurors could have concluded that Petitioner committed many more than the statutorily required two "acts of sexual abuse." Although the defense requested that the State be required to make an election as to the evidence they would rely on for the specific "acts of sexual abuse" that could

be considered by the jury in determining if Petitioner had committed the offense, the trial court refused to force the State to make such an election.[8 R.R. 27-29] Further, in compliance with section 21.02(d), Texas Penal Code, the jury was instructed that they did not have to unanimously agree on which specific acts of sexual abuse were committed by Petitioner or the exact date any such acts were committed.[C.R. 109] *See* TEX. PENAL CODE ANN. § 21.02(d) (Vernon 20xx) ("If a jury is the trier of fact, members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed.")

Therefore, it is impossible to tell from reviewing the Court's Charge or Verdict Form which specific acts of sexual abuse any particular juror or jurors believed beyond a reasonable doubt that Petitioner committed.

## B. The Court of Appeals' Opinion

In his first point of error below, Petitioner argued that his conviction for continuous sexual abuse was obtained in violation of the ex post facto prohibitions of both the United States and Texas Constitutions because evidence was adduced at trial of acts occurring prior to the effective date of the statute which could have been used by the jury to find Petitioner guilty.

In its original opinion, the court of appeals noted that, "in order to prevail on an ex post facto claim, Appellant was required to show that Section 21.02 itself operates retroactively, not that the trial court applied it retroactively" and, essentially, that a court cannot violate the *ex post facto* clause by applying a statute to conduct that occurred before the effective date of the statute. *See Whitington I*, slip op. at 4-5.

Petitioner argued on rehearing that the court of appeals' opinion misapplied the ex post facto prohibition as interpreted by the United States Supreme Court in *Peugh v. United States*, 133 S. Ct. 2072 (2013) (plurality op.). On rehearing, the court of appeals relied on this Court's decision in *Ex parte Heilman*, 456 S.W.3d 159 (Tex. Crim. App. 2015), to hold that it is "clear that *Peugh* did not expand the scope of the *Ex Post Facto* Clause to situations in which a trial court has simply erred by misapplying a law retroactively" and deny the Motion for Rehearing. *See Whitington II*, slip op. at 3-4.

## C.    Analysis

Contrary to the court of appeals' decision, the application of section 21.02 to conduct occurring prior to September 1, 2007, was an *ex post facto* violation as interpreted by the Supreme Court.

Both the United States and Texas Constitutions forbid *ex post facto* laws. *See* U.S. CONST. art. 1, §§ 9 cl. 3, 10 cl. 1; TEX. CONST. art. I, § 16. For purposes of this

case, an *ex post facto* law (1) punishes as a crime an act previously committed which was innocent when done, or (2) changes the punishment and inflicts a greater punishment than the law attached to a criminal offense when committed. *See, e.g.*, *Carmell v. Texas*, 529 U.S. 513, 522-25 (2000).

The right to be free of *ex post facto* laws is an "absolute" right. *See Marin v. State*, 851 S.W.2d 275-278 (Tex. Crim. App. 1993). The ex post facto prohibition is more of a categorical and systemic prohibition imposed upon the government by the people than it is an individual right. *See Ieppert v. State*, 908 S.W.2d 217, 220 (Tex. Crim. App. 1995).

While Courts agree that the *ex post facto* prohibition is aimed at legislative bodies, "[t]he coverage of the *Ex Post Facto* clause is not limited to legislative acts." *Peugh*, 133 S. Ct. at 2072. Instead, "[t]he Clause ensures that individuals have fair warning of applicable laws and guards against vindictive legislative action. . . . Even where these concerns are not directly implicated, however, the Clause also safeguards a fundamental fairness interest . . . in having the government abide by the rules of law it establishes to govern the circumstances under which it can deprive a person of his or her liberty or life." *Peugh*, 133 S. Ct. at 2084-85(citations and quotations omitted).

The continuous sexual abuse statute did not become effective until September 1, 2007, and it does not apply to any act committed before that date. *See* Act of May

18, 2007, 80th Leg., R.S., ch. 593, §§ 1.17, 4.01(a), 2007 Tex. Gen. Laws 1120, 1127, 1148. The Continuous Sexual Abuse statute is a new statute that, prior to September 1, 2007, was not included in the Penal Laws of Texas. The statute was passed to avoid the technical legal difficulties concerning double jeopardy, jury unanimity, due-process notice, and election law that frequently arose in the context of cases involving accusations of child sexual abuse. *See generally*, *Jacobsen v. State*, 325 S.W.3d 733, 738-39 (Tex. App.–Austin 2010, no pet.) (discussing *Dixon v. State*, 201 S.W.3d 731, 736-37 (Tex. Crim. App. 2006) (Cochran, J., concurring)).

As set out above, the trial court in this case instructed the jury in such a way that allowed them to consider evidence of acts alleged to have been committed by Petitioner prior to September 1, 2007, as the "acts of sexual abuse" necessary to find him guilty of the alleged violation of section 21.02. Further, although requested to do so by the defense, the trial court refused to require the State to elect the particular "acts of sexual abuse" it was relying on for conviction.[8 R.R. 27-29]

The net effect of this was two fold. First, Petitioner's alleged pre September 1, 2007, conduct was made the subject of a newly created substantive penal statute that did not exist at the time of the alleged conduct. Second, to the extent that Petitioner's alleged pre September 1, 2007, conduct amounted to violations of a then existing

penal statute, the punishment for the conduct was drastically increased by application of the new statute.

To the extent that the court of appeals relied on this Court's recent opinion in *Heilman* to find that there was no *ex post facto* violation in this case, that reliance is misplaced. Heilman knowingly and voluntarily waived the two year misdemeanor statute of limitations as part of a plea agreement whereby he avoided being indicted for a felony charge that was not limitations barred. *See Heilman*, 456 S.W.3d at 161. Six months into the deferred adjudication community supervision that he agreed to accept to avoid being prosecuted for a felony, Heilman filed an Application for Writ of Habeas Corpus alleging that the trial court lacked jurisdiction to accept his plea because he had a "pure law" limitations defense which could not be waived and the trial court granted relief. *See id.* Based on several considerations that are not present in this case, this Court ultimately reversed the trial court's grant of relief. Review of this majority opinion and the various concurring and dissenting opinions in *Heilman* reveals that its reasoning is not applicable here.

First, the decision in *Heilman* turned on categorization of the limitations defense. Without going into great detail, this Court ruled in *Heilman* that there is no longer any distinction between "factual" and "pure law" limitations defenses for

purpose of determining if limitations is a *Marin*[3] category 1, 2, or 3 right. *See id.*, 456 S.W.3d at 162-66. As set out above, *ex post facto* violations are category 1 rights that cannot be waived, while, after *Heilman*, limitations violations are category 3 rights that must be asserted in the trial court.

In this case, the violation is not a "plain vanilla limitations claim" at all – it is the retroactive application of a new statute to conduct occurring prior to the enactment of the statute. This is precisely the type of "unforeseeable judicial enlargement of a criminal statute, applied retroactively" that this Court refused to condone in *Heilman*. *See id.* at 166.

Second, in Heilman, this Court focused extensively on the fact that Heilman bargained away his limitations rights to avoid being prosecuted for a felony and was thus complicitous in the very limitations complaint that he sought to raise later. *See id.* at 166-68. In this case, Petitioner did not, in any way, bargain for or condone the application of the continuous sexual abuse statute to his conduct occurring before the effective date.

In sum, allowing the State to secure a conviction for violation of a new substantive criminal statute requiring a minimum 25 year sentence without the possibility of parole on the basis of conduct that occurred prior to the stated effective

---

[3] *See Marin*, 851 S.W.2d at 279.

date of that statute is fundamentally unfair in that it effectively allows the State to thumb its nose at the express language of enabling legislation to the statute it was seeking to enforce. This fundamentally unfair application of the statute is the type of non-legislative conduct encompassed in the *ex post facto* prohibition as interpreted in *Peugh*.

By holding to the contrary, the court of appeals has decided an important question of state or federal law in a way that conflicts with the applicable decisions of the Court of Criminal Appeals or the Supreme Court of the United States. *See* TEX. R. APP. P. 66.3(c). Further, to the extent that this issue has not been squarely addressed by this Court in *Heilman* or any other case, the court of appeals has decided an important question of state and federal law that has not been, but should be, settled by this Court. *See* TEX. R. APP. P. 66.3(b).

## *PRAYER*

WHEREFORE, PREMISES CONSIDERED, Petitioner respectfully prays that this Court will grant this Petition for Discretionary Review, order a full briefing of the issues presented herein, and after considering the merits, reverse the judgment of the court of appeals, remand this cause to the trial court for a new trial, and grant such other and further relief as he may show himself deserving, at law and in equity.

Respectfully submitted,

 /s/ Wm. Reagan Wynn
WM. REAGAN WYNN
State Bar No. 00797708

KEARNEY | WYNN
One Museum Place
3100 West 7th Street, Suite 420
Fort Worth, Texas 76107
(817) 336-5600
(817) 336-5610 (fax)
rwynn@kearneywynn.com

ATTORNEY FOR PETITIONER

## *CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION*

I certify that this Petition was prepared with WordPerfect X5, and that, according to that program's word-count function, contains 3,408 words.

 /s/ Wm. Reagan Wynn
WM. REAGAN WYNN

## CERTIFICATE OF SERVICE

This is to certify that a copy of this Petition has been forwarded to:

Debra Windsor
Tarrant County District Attorney's Office
401 W. Belknap
Fort Worth, Texas 76196-0201

Lisa C. McMinn
State Prosecuting Attorney
P.O. Box 12405
Austin, Texas 78711

on the 31st day of August, 2015.

  /s/ Wm. Reagan Wynn
WM. REAGAN WYNN



COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| TIMOTHY EDWARD WHITINGTON, | § | No. 08-13-00102-CR |
| Appellant, | § | Appeal from the |
| v. | § | 432nd District Court |
| THE STATE OF TEXAS, | § | of Tarrant County, Texas |
| Appellee. | § | (TC#1284003R) |
| | § | |

## **O P I N I O N**

Appellant Timothy Edward Whitington was convicted of continuous sexual abuse of a young child and sentenced to 50 years' confinement. *See* TEX.PENAL CODE ANN. § 21.02(b) (West Supp. 2014). On appeal, Appellant contends his conviction constitutes an *ex post facto* application of the continuous sexual abuse statute. In a related issue, he contends the jury charge erroneously permitted the jury to convict him based on conduct occurring before the effective date of the statute. Appellant also contends the jury charge erroneously enlarged the allegations in the indictment and failed to include all the elements of the predicate offenses. We conclude there was

no *ex post facto* violation and no reversible error in the jury charge.   Accordingly, we affirm.[1]

## BACKGROUND

Appellant had a son, E.   Appellant and E were often nude when they were together. Sometimes they used an internet video connection to chat with other nude men and their nude sons.   Sometimes they visited other men, some of who had sons, and the visits included nudity.

Appellant became the focus of a federal investigation after a tip from INTERPOL to U.S. authorities.   Federal agents obtained a warrant to search Appellant's apartment.   At one point during the search, Appellant told the agents, "You're here for the bad stuff," and directed the agents to a password-protected USB computer storage device and provided the password.

When the agents showed Appellant an excerpt of chats between his email account and a man in the United Kingdom, Appellant admitted the chats were his and that he had sent nude photos of E to the man.   The chats describe Appellant and the other man's sexual attraction to their children.   In them, Appellant shares that he and E masturbate each other, but that E is unwilling to do more.   The two men discuss having the other man's son perform sexual acts on him during their video chats, with E watching, so that E will become comfortable with the idea. Appellant expresses his intent to engage in anal sex with E when E is older and more receptive to it.

Appellant revealed to the agents that before they arrived that day, he and E had been chatting over the internet-video connection with another man and his three sons who lived in Michigan.   He said everyone involved was nude and that he and the Michigan man discussed their sexual interest in children.   Photos were taken, including a close-up of E's genitals.

---

[1] This case was transferred from the Second Court of Appeals in Fort Worth pursuant to a docket equalization order. We therefore decide this case in accordance with the precedent of that Court to the extent required by TEX.R.APP.P. 41.3.

2

Appellant admitted to the agents that he had touched E inappropriately. Appellant said that E had been masturbating him since E turned nine years old in August 2008. Appellant described an incident in November 2009 in which he stroked E's erect penis while they were in bed nude together, and an incident in October 2010 when he and E touched each other's penises. Appellant reported he had ejaculated. He said his last sexual contact with E was December 26, 2010, the day before the search.

After Appellant was arrested by federal officers, he agreed to a videotaped interview with a Euless police detective. That video interview was admitted into evidence and played to the jury. Appellant admitted to the detective that the close-up photo of E's genitals had been taken during the video chat with the Michigan man and his children. Appellant described incidents in which he masturbated in front of E, in which E touched his penis and helped him masturbate, and in which he helped E masturbate, including two specific incidents in August and November 2010.

E was interviewed by a forensic interviewer. A videotape of that interview was admitted into evidence by agreement and played to the jury. In it, E describes video chatting while nude with other men and boys, having his photo taken while he was nude, and visiting other men and being nude with them. E told the interviewer that Appellant took pictures of him without clothes and of his privates. He said that Appellant had touched E's penis with his hand more than one time. The first time, he was young and had not started school, and Appellant was just teaching him how to clean himself. The other times he remembered were in the fourth grade, in the fifth grade, during the summer before the sixth grade, and in the sixth grade the day before Appellant was arrested. E also told the interviewer that he had touched Appellant's penis. He said that it happened when he was little and did not know what he was doing, and again when he was ten and

3

eleven years old – once or twice in the fifth grade and once in the sixth grade.[2]   The jury convicted Appellant of continuous sexual abuse of a child.   At punishment, the jury heard that Appellant had pleaded guilty in federal court to producing child pornography and had been sentenced to 192 months in the federal penitentiary. The jury assessed Appellant's punishment at 50 years in prison.   Appellant's 50-year sentence was allowed to run concurrently with his federal sentence.

## DISCUSSION

### *Ex Post Facto* **Violation**

In his first issue, Appellant contends his conviction for continuous sexual abuse violates the *ex post facto* clauses in the Texas and United States Constitutions.   He points out that the statute outlawing continuous sexual abuse of a child, TEX.PENAL CODE ANN. § 21.02, became effective September 1, 2007, and does not apply to acts of sexual abuse committed before that date. *See* Act of May 18, 2007, 80th Leg., R.S., ch. 593, §§ 1.17, 4.01(a), 2007 TEX. GEN. LAWS 1120, 1127, 1148.   Appellant argues an *ex post facto* violation occurred because the jury heard evidence of conduct occurring before the effective date of the statute and was instructed in the jury charge in such a manner that it could have considered that conduct as part of the alleged offense.

Appellant's argument is misplaced.   Both the federal and state constitutions prohibit the promulgation of an "ex post facto law."   *See* U.S. CONST. art. I, § 10; TEX. CONST. art. I, § 16. This prohibition bars in part prosecution or conviction for behavior that did not constitute a criminal offense when it happened.   *Rodriguez v. State*, 93 S.W.3d 60, 66-67 (Tex.Crim.App. 2002); *see also Collins v. Youngblood*, 497 U.S. 37, 42–44, 110 S.Ct. 2715, 111 L.Ed.2d 30

---

[2]  E testified at trial, but was not questioned about the abuse because he stated he did not want to talk about it in front of the jury.

4

(1990). In both provisions, however, "the language is directed at the Legislature, not the courts." *Ortiz v. State*, 93 S.W.3d 79, 91 (Tex.Crim.App. 2002). "Indeed, the Supreme Court has indicated that an *ex post facto* problem does not arise from a trial court's erroneous retroactive application of a statute, but only if the statute itself has retroactive effect." *Id.* (citing *Johnson v. United States*, 529 U.S. 694, 701–02, 120 S.Ct. 1795, 146 L.Ed.2d 727 (2000)).

Consequently, in order to prevail on an *ex post facto* claim, Appellant was required to show that Section 21.02 itself operates retroactively, not that the trial court applied it retroactively. *Id.* For example, in *Oritz*, the appellant argued the *ex post facto* clause was violated because the trial judge had erroneously charged the jury with the amended definition of retaliation rather than the definition in effect as the time of the offense. *Id.* But, the Court of Criminal Appeals held there was no *ex post facto* violation because the appellant failed to show, or argue, the statute itself operated retroactively, but rather complained only about the trial court's erroneous retroactive application of the statute in the jury charge. *Id.* The Court of Criminal Appeals has recently reaffirmed its holding in *Ortiz*: "Only the legislature can violate either the federal or state *Ex Post Facto* Clause because – as we held in *Ortiz v. State* and now reaffirm – both are 'directed at the Legislature, not the courts.'" *Ex parte Heilman*, ___S.W.3d___, 2015 WL 1245933, at *3 (Tex.Crim.App. March 18, 2015).

Appellant's sole argument here is that an *ex post facto* violation occurred because the trial court erroneously charged the jury and thereby allowed the jury to consider conduct occurring before the effective date of the statute. As in *Ortiz*, Appellant has not shown, or even contended, that Section 21.02 itself operates retroactively, and our review of the statute confirms that it does not. Accordingly, we find no *ex post facto* violation, and overrule Issue One.

5

**Jury Charge Error**

Appellant raises three issues attacking the jury charge. In Issue Two, which is related to the *ex post facto* challenge, Appellant contends the trial court erroneously instructed the jury it could convict him based on conduct that occurred at any time prior to the return of the indictment, thereby allowing the jury to consider evidence of acts committed before the effective date of the continuous sexual abuse statute. In Issue Three, he contends the trial court erroneously enlarged the allegations in the indictment by broadly defining the predicate offense of sexual performance by a child to include conduct not alleged in the indictment. In Issue Four, Appellant contends the application paragraph erroneously failed to include elements of the predicate offenses of indecency with a child and sexual performance by a child. We conclude there is no reversible error in the jury charge.

*Standard of Review*

Appellate review of purported error in a jury charge involves a two-step process. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex.Crim.App. 2012). We first determine whether error occurred; if error did not occur, our analysis ends. *Hailey v. State*, 413 S.W.3d 457, 495 (Tex.App. – Fort Worth 2012, pet. ref'd). Second, if error occurred, we then evaluate whether sufficient harm resulted from the error to require reversal. *Kirsch*, 357 S.W.3d at 649; *Hailey*, 413 S.W.3d at 495.

The degree of harm required for reversal depends on whether the error was preserved. *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex.Crim.App. 2015); *Kirsch,* 357 S.W.3d at 649. When error is preserved in the trial court, the record must show only "some harm." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1985)(op. on reh'g). When error is not preserved, reversal is required only if there was "egregious harm," *i.e.*, the error was so egregious and created

6

such harm that the defendant was deprived of a fair and impartial trial. *See Villarreal*, 453 S.W.3d at 433.

*Consideration of Conduct Predating the Effective Date of the Statute*

In Issue Two, Appellant contends the jury charge erroneously permitted the jury to convict him based on acts he committed prior to September 1, 2007, the effective date of the continuous sexual abuse statute.

The application paragraph in the charge instructed the jury that in order to find Appellant guilty, it must find he committed two or more acts of sexual abuse between August 1, 2008 and December 26, 2010. The abstract portion of the charge, however, instructed the jury that conviction could be had upon proof that the offense was committed any time before the presentment of the indictment on May 31, 2012:

> You are further instructed that the State is not bound by the specific date on which the offense, if any, is alleged in the indictment to have been committed, but conviction may be had upon proof that the offense, if any, was committed any time prior to the presentment of the indictment … [which] was presented … May 31, 2012.

Appellant relies on *Martin v. State*, 335 S.W.3d 867 (Tex.App. – Austin 2011, pet. ref'd). In *Martin* the application paragraph authorized conviction only if the jury found the continuing sexual abuse occurred between October 1, 2007 and January 26, 2008. *Id.* at 873-74. The charge also instructed the jury, however, that the "[S]tate is not required to prove the exact dates alleged in the indictment but may prove the offenses, if any, to have been committed at any time prior to the presentment of the indictment." *Id.* at 873. The court recognized the longstanding rule in Texas that the State may prove an offense was committed on any date prior to the return of the indictment, but noted that in a continuous sexual abuse case, that rule conflicted with the

7

limitation making the statute inapplicable to acts of sexual abuse committed before September 1, 2007. *Id*. The court determined that aside from the application paragraph, "[t]he problem remains" that there was nothing in the charge requiring or otherwise directing the jurors not to convict the appellant based on findings of sexual abuse occurring before September 1, 2007. *Id*. at 874-75. The court concluded the charge thus presented the jury with a broader chronological perimeter than permitted by law. *Id*. at 875-76. Accordingly, the court held the charge was erroneous because the trial court failed to instruct the jurors on its own motion that they were not permitted to convict based on acts committed before September 1, 2007. *Id*. at 876.

Following *Martin*, the courts of appeals have uniformly determined that, even when the application paragraph limits conviction to the proper time period, the charge is erroneous unless the instruction on the nonbinding nature of the dates alleged in the indictment is somehow specifically limited to require the jurors to convict based only on acts of sexual abuse occurring on or after September 1, 2007. *See, e.g., Gomez v. State*, __S.W.3d__, 2015 WL 303095, at *5 (Tex.App. – Tyler Jan. 21, 2015, pet. filed); *Kuhn v. State*, 393 S.W.3d 519, 524 (Tex.App. – Austin 2013, pet. ref'd);[3] *cf. Struckman v. State*, No. 10-10-00427-CR, 2011 WL 4712236, at *2 (Tex.App. – Waco Oct. 5 2011, no pet.) (mem. op., not designated for publication) (distinguishing *Martin* because the chronological perimeter was limited by a subsequent instruction that the State had elected to proceed only on events occurring after September 1, 2007).

---

[3] *See also Flores v. State,* No. 13-12-00606-CR, 2014 WL 1514129, at *5 (Tex.App. – Corpus Christi-Edinburg April 17, 2014, pet. ref'd)(mem. op., not designated for publication); *Oliver v. State*, No. 10-12-00389-CR, 2014 WL 1016244, at **7-8 (Tex.App. – Waco March 13, 2014, no pet.) (mem. op., not designated for publication); *Cortez v. State*, No. 13-10-00616-CR, 2012 WL 3134244, at *3 (Tex.App. – Corpus Christi-Edinburg Aug. 2, 2012, no pet.)(mem. op., not designated for publication); *Saldana v. State*, No. 03-10-00371-CR, 2012 WL 3797611, at **2-3 (Tex.App. – Austin Aug. 31, 2012, pet. ref'd) (mem. op., not designated for publication)(holding that charge erroneous because it stated the jury could consider events occurring "on or about" September 1, 2007).

8

We likewise conclude that the jury charge in this case was erroneous in potentially allowing the jury to convict Appellant based on acts he committed prior to September 1, 2007. We also conclude, however, that the charge error was not egregiously harmful to Appellant. We apply the egregious harm standard because Appellant failed to preserve error. Although Appellant objected to the jury instruction regarding the nonbinding nature of the dates alleged in the indictment, he failed to preserve error because he did not object on the same ground he raises on appeal and because he failed to sufficiently inform the trial court of the basis of his objection.

The basic principle of error preservation is the complaining party must let the trial judge know what he wants and why he thinks he is entitled to it, and do so clearly enough for the judge to understand and at a time when the trial court is in a position to do something about it. *Chase v. State*, 448 S.W.3d 6, 11 (Tex.Crim.App. 2014); *Bekendam v. State*, 441 S.W.3d 295, 300 (Tex.Crim.App. 2014); *see also* TEX.R.APP.P. 33.1 (to preserve error a timely objection must be made that states the grounds "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context"). While the courts "are not hyper-technical in examination of whether error was preserved," the point of error on appeal must comport with the objection made at trial. *Bekendam*, 441 S.W.3d at 300.

Appellant argues on appeal that the instruction permitted the jury to potentially convict him based on acts he committed before September 1, 2007. Appellant's objection at trial, however, focused on modifying the instruction to specifically identify the predicate offenses of indecency with a child and sexual performance by a child as "the offenses," and to emphasize that these offenses must occur during a period of time of 30 or more days in duration, as required by the statute. While Appellant's objection referred to the time period alleged in the indictment ("on or

9

about August 1st, 2008, through December 26th, 2010"), Appellant never asserted that the instruction as written would allow the jury to convict him based on conduct occurring before September 1, 2007. In fact at one point, counsel appears to state that the portion of the instruction allowing the State to prove the offenses by acts committed at any time prior to the presentment of the indictment should remain in the charge. In sum, Appellant's objection at trial did not raise the ground he argues on appeal. Further, the trial objection was not clear enough to inform the trial judge what Appellant wanted and why he was entitled to it. Appellant thus failed to preserve error, and we apply the egregious harm standard.

Charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Villarreal*, 453 S.W.3d at 433; *see also Allen v. State*, 253 S.W.3d 260, 264 (Tex.Crim.App. 2008). Egregious harm is a "high and difficult standard" to meet, and such a determination must be "borne out by the trial record." *Villarreal*, 453 S.W.3d at 433 (citing *Reeves v. State*, 420 S.W.3d 812, 816 (Tex.Crim.App. 2013)). We will not reverse a conviction unless the defendant has suffered "actual rather than theoretical harm." *Id.* (citing *Cosio v. State*, 353 S.W.3d 766, 777 (Tex.Crim.App. 2011)).

In examining the record to determine whether charge error has resulted in egregious harm to a defendant, we consider (1) the entirety of the jury charge, (2) the state of the evidence, including the contested issues and weight of probative evidence, (3) the arguments of counsel, and (4) any other relevant information revealed by the trial record as a whole. *Id.*

The entirety of the jury charge mitigates against finding egregious harm. The charge correctly instructed the jury that Appellant had been charged in the indictment with continuous sexual abuse of a child "alleged to have been committed on or about the 1st day of August, 2008

through the 26th day of December, 2010[.]" Then, in the paragraph immediately preceding the erroneous instruction, the jury was charged that in order to find Appellant guilty, it "must unanimously agree that the defendant, during a period that is 30 or more days in duration, on or about August 1st, 2008 through December 26, 2010 as charged in Count One of the Indictment, committed two or more acts of sexual abuse." Thus, the charge expressly reminded the jury of the relevant time period in the case. Further, the erroneous portion of the charge was immediately followed by the application paragraph that again correctly instructed the jury that to convict Appellant, it must find beyond a reasonable doubt that Appellant, "on or about the 1st day of August, 2008 through the 26th day of December, 2010," committed two or more acts of sexual abuse.

Texas courts have repeatedly held that where the application paragraph of the charge correctly instructs the jury on the law applicable to the case, this mitigates against a finding that any error in the abstract portion of the charge was egregious. *Kuhn,* 393 S.W.3d at 529 (and cases cited therein).

Moreover, the trial court included a limiting instruction in the charge that if there was any testimony regarding offenses other than those alleged in the indictment, the jury could only consider those offenses in determining intent, state of mind, the previous and subsequent relationship between Appellant and E, "and for no other purpose." This instruction also weighs against any finding that Appellant was denied a fair and impartial trial because it effectively informed the jury not to convict Appellant based on acts he committed before September 1, 2007.

The state of the evidence also weighs against finding egregious harm. Appellant points to evidence presented at trial of acts occurring before September 1, 2007. Specifically, he points to

evidence that E stated that Appellant touched his penis before he started kindergarten; that E described touching Appellant's penis when he was "very little;" that E indicated to the CPS worker that any touching happened "a long time ago;" that E was vague about dates of alleged conduct during his interview; and that Appellant admitted to showering with E when E was 6 to 8 years old. This evidence, however, could have been properly considered as circumstantial evidence of Appellant's intent, state of mind, or previous relationship with E, as directed by the limiting instruction given in the charge (and to which Appellant did not object). *See* TEX.CODE CRIM.PROC.ANN. art. 38.37 (West Supp. 2014); *see also Martin*, 335 S.W.3d at 876.

In any event, there was overwhelming evidence, some from Appellant himself, to support a finding beyond a reasonable doubt that Appellant committed two or more acts of sexual abuse during the relevant period after September 1, 2007.

Appellant admitted that E had been masturbating him since E turned nine years old in August 2008. Appellant described an incident in November 2009 in which he stroked E's erect penis and an incident in October 2010 where he and E touched each other's penises. He admitted to sexual contact with E on December 26, 2010, the day before the federal search, and that he had shared photos of E's genitals with others that same day. Appellant also described incidents in which he masturbated in front of E, in which E touched his penis and helped him masturbate, and in which he helped E masturbate, including two specific incidents in August and November 2010. In his video interview, E said that Appellant had touched his penis in the fourth grade (*i.e.*, after August 2008), in the fifth grade, during the summer before the sixth grade, and in the sixth grade the day before Appellant was arrested. E also told the interviewer that he had touched Appellant's penis when he was ten and eleven years old – once or twice in the fifth grade and once

12

in the sixth grade. This evidence was more than sufficient to convict Appellant based on acts of sexual abuse occurring between August 1, 2008 and December 26, 2010. Thus, the jurors could have lawfully convicted Appellant for continuous sexual abuse of a young child even if they had been properly instructed not to base a conviction on Appellant's conduct prior to September 1, 2007.

Finally, neither the State nor Appellant mentioned or relied on the erroneous instruction in argument, nor did they address or rely on any testimony or evidence of any acts occurring before September 1, 2007. Instead, the State generally emphasized the sufficiency of the evidence, including the admissions by Appellant, and specifically mentioned by date only incidents occurring in 2010. Appellant's principal argument was that the evidence was sufficient to convict him only of the lesser-included offense of indecency with a child, but not sufficient to convict him of continuous sexual abuse. Thus, there was nothing in the argument of counsel that focused the jury on supporting conviction based on conduct occurring before September 1, 2007.

Considering the above factors in their totality, we cannot conclude the charge error in this case amounted to egregious harm that deprived Appellant of a fair and impartial trial. We overrule Issue Two.

*Conduct Not Alleged in the Indictment*

In Issue Three, Appellant complains the jury charge authorized conviction for conduct not alleged in the indictment. In particular, Appellant contends that by including the full statutory definitions of "sexual conduct," "performance," and "sexual performance" in the charge, the court authorized conviction for acts of "sexual performance by a child" beyond the two theories alleged in the indictment. Appellant did not raise these objections in the trial court. We conclude that

13

even assuming it was error to instruct the jury on the full and correct statutory definitions, Appellant did not suffer egregious harm.

A person commits the offense of continuous sexual abuse of a young child if he commits two or more acts of "sexual abuse" during a period 30 or more days in duration.[4]  TEX.PENAL CODE ANN. § 21.02(b) (West Supp. 2014).   "Sexual abuse" is defined to include the violation of several penal laws, including indecency with a child under Section 21.11(a)(1) (excluding touching a child's breast) and sexual performance by a child under Section 43.25.[5]  *Id.* at § 21.02(c)(2, 6).

The indictment charged Appellant with continuous sexual abuse of E through (1) indecency with a child, specifically by touching E's genitals or causing E to touch Appellant's genitals; and/or (2) sexual performance by a child, specifically by causing E to engage in "sexual conduct" by lewd exhibition of the genitals and/or by inducing E to masturbate in Appellant's presence.   Appellant does not complain that the application paragraph itself expanded upon the allegations in the indictment.   The application paragraph limited the predicate offenses of indecency with a child and sexual performance by a child to the theories alleged in the indictment.

Appellant's complaint lies with the instructions in the abstract portion of the charge that provided the full statutory definitions of "sexual conduct," "performance," and "sexual performance."[6]  Appellant contends these instructions in the abstract portion of the charge, rather

---

[4] The defendant must be age 17 or older and the victim must be younger than age 14.   TEX.PENAL CODE ANN. § 21.02(b)(2) (West Supp. 2014).

[5] "Sexual performance by a child" occurs when a person employs, authorizes, or induces a child younger than 18 to engage in "sexual conduct" or a "sexual performance."   TEX.PENAL CODE ANN. § 43.25(b) (West 2011).

[6] The terms as defined in the charge, which are set out below, all conformed to the full statutory definitions:

 "Performance" means any play, picture, photograph, dance or other visual representation that can be exhibited before

14

than limiting "sexual performance by a child" to the two theories alleged in the indictment, greatly expanded the theories available for conviction. For instance, Appellant contends these full definitions allowed the jury to consider conviction not only based on his inducing E to masturbate in his presence but also for inducing E to engage in deviate sexual intercourse, sexual bestiality, sado-masochistic abuse, and the like. We disagree.

The application paragraph is the "heart and soul" of the jury charge. *See Vasquez v. State,* 389 S.W.3d 361, 367 (Tex.Crim.App. 2012). The Court of Criminal Appeals has observed, "[i]t is the application paragraph of the charge, not the abstract portion, that authorizes a conviction." *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex.Crim.App. 2012). And, the Court has recently explained, this means that "the application paragraph is what, as a practical manner, authorizes the jury to convict but is not necessarily determinative of what legally authorizes a conviction. The application paragraph is what explains to the jury, in concrete terms, how to apply the law to the facts of the case." *Yzaguirre v. State*, 394 S.W.3d 526, 530 (Tex.Crim.App. 2013).

In the instant case, the application paragraph properly directed the jury only to the acts of sexual abuse authorized by the indictment, and did not authorize conviction for such things as deviate sexual intercourse, sexual bestiality, or sado-masochistic abuse. In determining whether the jury charge improperly expanded on the allegations in the indictment, and in making a harm analysis, the proper focus is on the language in the application paragraph. *Id.* "Where the

---

an audience of one or more persons. *See* TEX.PENAL CODE ANN. § 43.25(a)(3) (West 2011).

"Sexual performance" means any performance or part thereof that includes sexual conduct by a child younger than 18 years of age. *See id.* at § 43.25(a)(1).

"Sexual conduct" means sexual contact, actual or simulated intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sado-masochistic abuse, or lewd exhibition of the genitals, the anus, or any portion of the female breast below the top of the areola. *See id.* at § 43.25(a)(2).

application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious." *Medina v. State*, 7 S.W.3d 633, 640 (Tex.Crim.App. 1999). Therefore, even if the instructions in the abstract portion of the charge were erroneous, we cannot conclude Appellant suffered egregious harm. *See Patrick v. State*, 906 S.W.2d 481, 493 (Tex.Crim.App. 1995) (holding no harm where the application paragraph points the jury to the appropriate portions of the definitions). Appellant's third issue is overruled.

*The Application Paragraph*

In Issue Four, Appellant contends the application paragraph of the jury charge erroneously failed to include all the elements of the predicate offenses of indecency with a child and sexual performance by a child.[7] Appellant did not raise these objections in the trial court.

Appellant first argues the portion of the application paragraph concerning indecency with a child failed to require the jury to determine whether he engaged in "sexual contact" and whether he did so with the intent "to arouse or gratify the sexual desire of any person." The application paragraph was preceded in the abstract portion of the charge by instructions that contained these elements, however. The jury was instructed that one commits the offense of indecency with a child if that person intentionally "with the intent to arouse or gratify the sexual desire of any person, engages in sexual contact with the child or causes the child to engage in sexual contact." The jury was also instructed that "sexual contact" includes "any touching by a person … of the genitals of a child, or any touching of any part of the body of a child … with … any part of the genitals of a person with the intent to arouse or gratify the sexual desire of any person."

---

[7] The application paragraph instructed the jury that the acts of "sexual abuse" included:  (a) indecency with a child – by touching E's genitals and/or causing E to touch Appellant's genitals; and/or (b) sexual performance by a child – by "causing" E to engage in "sexual conduct" of (i) lewd exhibition of the genitals and/or by (ii) "inducing" E to masturbate in Appellant's presence.

16

Likewise, Appellant also argues the portion of the application paragraph concerning sexual performance by a child failed to require the jury to determine that he induced E to engage in sexual conduct "knowing the character and content thereof." Again, however, the abstract portion of the charge contained an instruction that included this element. The jury was instructed that one commits the offense of sexual performance by a child if the person "knowing the character and content thereof" induces the child "to engage in sexual conduct or a sexual performance."

The gravamen of Appellant's complaint then is that the elements of these underlying or predicate offenses were required to be included in the application paragraph and could not be included elsewhere in the jury charge. We disagree.

As this Court has recognized, under the plain language of Section 21.02(b), the offense of continuous sexual abuse of a young child has five elements: (1) a person (2) who is 17 or older (3) commits a series of two or more acts of sexual abuse (4) during a period of thirty or more days, and (5) the victim is younger than 14. *Casey v. State*, 349 S.W.3d 825, 829 (Tex.App. – El Paso 2011, pet. ref'd). The specific acts of sexual abuse the defendant is alleged to have committed are merely the manner and means by which the "series" element is accomplished. *Id.* The application paragraph here properly addressed the five elements of the charged offense – continuous sexual abuse of a young child. Since Appellant was tried for continuous sexual abuse of a young child, and not for the offenses of indecency with a child and sexual performance by a child, it was unnecessary to set out the constituent elements of those predicate offenses in the application paragraph as long as those offenses were defined in the abstract portion of the charge. *See Rodriguez v. State*, 687 S.W.2d 505, 509 (Tex.App. – Houston [1st Dist.] 1985, no pet.) (holding that since appellant was indicted for burglary of a habitation with the intent to commit

17

sexual assault, and not for sexual assault, it was unnecessary to set out the elements of sexual assault in the application paragraph as long as those elements were defined in the abstract portion of the charge).

The application paragraph properly instructed the jury under what circumstances they could convict Appellant. Those circumstances – commission of indecency with a child and/or sexual performance by a child – were completely explained to the jury in the abstract portion of the charge. The jury charge was not erroneous because the instructions provided a "complete map" to the jury of "each step necessary to convict." *See Holley v. State*, 766 S.W.2d 254, 256 (Tex.Crim.App. 1989) (despite application paragraph requiring jury to find for conviction that defendant committed "a felony, to-wit: injury to a child," the charge provided a "complete map" to the jury because the abstract portion of the charge "completely explained to the jury" that it was a felony to cause "serious bodily injury to a child").

Appellant also contends the portion of the application paragraph concerning sexual performance by a child erroneously uses the term "causing" rather than the statutory term "inducing" E to engage in sexual conduct.[8] In this regard, a person commits the offense of sexual performance by a child if he "employs, authorizes, or *induces* a child younger than 18 years of age to engage in sexual conduct or a sexual performance." TEX.PENAL CODE ANN. § 43.25(b) (emphasis added). The abstract portion of the charge, however, correctly instructed the jury that a person commits the offense of sexual performance by a child it the person "employs, authorizes, or induces a child younger than 18 years of age to engage in sexual conduct or a sexual performance." Like the Court of Criminal Appeals in *Holly*, we conclude that despite the use of the term

---

[8] The application paragraph provided in pertinent part that Appellant could be found guilty of continuous sexual abuse of a young child if the jury found that he committed "two or more acts of sexual abuse" "to wit: … sexual performance by a child by causing [E] to engage in sexual conduct …."

"causing" in the application paragraph, the charge provides a complete map to the jury of each step necessary to convict, because the abstract portion of the charge properly explains that a person commits sexual performance by a child if he "induces" a child to engage in sexual conduct or a sexual performance.

In any event, Appellant did not object on this ground in the trial court. Considering the entirety of the jury charge, we cannot conclude the jury was confused or misled by the use of the term "causing" in the application paragraph, particularly when the jury was specifically charged in the abstract portion that the offense of sexual performance by a child required that the defendant induce the child to sexual conduct or a sexual performance.[9] Further, as described above, Appellant's own admissions established that he induced E to sexual conduct and sexual performance. Moreover, in final arguments, neither the State nor Appellant attempted to raise any distinction between Appellant's "causing" or "inducing" E to sexual conduct or performance. Even assuming error, we cannot conclude the error amounted to egregious harm that deprived Appellant of a fair and impartial trial. We overrule Issue Four.

## CONCLUSION

Accordingly, we affirm the trial court's judgment.

STEVEN L. HUGHES, Justice

April 24, 2015

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)

---

[9] We note that the terms "causing" and "induce" have similar meanings in this context. "Causing" includes a person acting "in such a way that some specific thing happens as a result," and "induce" means "to lead or move by persuasion or influence[.]" *Webster's New Universal Unabridged Dictionary* (2003), pp. 330, 975. That Appellant may have acted in such a way that E participated in sexual conduct as a result, or whether Appellant led or moved E to do so by persuasion or influence, appears to be a distinction without a difference.

19



| TIMOTHY EDWARD WHITINGTON, | § | |
|---|---|---|
| | | No. 08-13-00102-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 432nd District Court |
| THE STATE OF TEXAS, | § | |
| | | of Tarrant County, Texas |
| Appellee. | § | |
| | | (TC#1284003R) |
| | § | |

## OPINION ON REHEARING

In denying Appellant's *ex post facto* claim, we held that Appellant was required to show that the statute itself operates retroactively, not that the trial court applied it retroactively. We based our holding on *Ortiz v. State*, 93 S.W.3d 79, 91 (Tex.Crim.App. 2002), in which the Court of Criminal Appeals concluded there was no *ex post facto* violation because the appellant failed to show, or argue, that a statute itself operated retroactively, but rather complained only about the trial court's erroneous retroactive application of the statute in the jury charge. We noted that, like the statute in *Ortiz*, the continuous sexual abuse statute does not itself operate retroactively; indeed, the statute explicitly provides that it does *not* apply to acts of sexual abuse committed before its effective date of September 1, 2007. *See* Act of May 18, 2007, 80th Leg., R.S., ch. 593, §§ 1.17, 4.01(a), 2007 TEX. GEN. LAWS 1120, 1127, 1148. Therefore, we concluded that the error

1

that occurred in this case, in which the trial court allowed the jury to consider conduct occurring before the effective date of the statute, resulted from the trial court's erroneous application of the statute, which did not amount to an *ex post facto* violation.

On rehearing, Appellant contends that our holding conflicts with the United States Supreme Court decision in *Peugh v. United States*, __U.S.__, 133 S.Ct. 2072, 186 L.Ed.2d 84 (2013). In particular, Appellant asserts that *Peugh* stands for the proposition that a trial court's improper retroactive application of a statute may violate the *Ex Post Facto* Clause. We disagree.

In *Peugh*, the defendant was convicted of five counts of bank fraud that occurred in 1999 and 2000. The trial court sentenced him to 70 months' imprisonment based on the Federal Sentencing Guidelines issued by the United States Sentencing Commission in 2009, rather than on the 1998 Guidelines that were in effect at the time he committed his offenses.[1] *Id*. at 2079. The defendant in *Peugh* contended that the trial court's application of the 2009 Sentencing Guidelines violated the *Ex Post Facto* Clause, and that he should have instead been sentenced under the 1998 version of the Sentencing Guidelines that were in effect at the time of his offenses. *Id*. at 2078.

The Supreme Court initially noted that the *Ex Post Facto* Clause only forbids the passage of ex post facto "laws"; as such, the Court questioned whether the Sentencing Guidelines had the force and effect of law for purposes of the *Ex Post Facto* Clause. *Id.* In answering this question in the affirmative, the Court initially pointed out that the Guidelines were promulgated by the United States Sentencing Commission, which, in turn, was created by Congress for the delegated purpose of adopting mandatory sentencing guidelines. *Id.* at 2079. The Court further noted that 18 U.S.C. § 3553(a)(4)(A)(ii) expressly instructs district courts to apply the Sentencing Guidelines

---

[1] The applicable sentencing range under the 1998 Guidelines was 30 to 37 months, while the sentencing range rose under the 2009 Guidelines to 70 to 87 months, making the low end of the 2009 Guidelines 33 months higher than the high end of the 1998 Guidelines range. *Id*. at 2078-79.

2

that are "in effect on the date the defendant is sentenced," rather than the Guidelines in effect at the time the defendant's offense was committed. *Id.* at 2081. Because the defendant in *Peugh* did in fact receive an increased punishment based on the trial court's application of the Commission's 2009 Sentencing Guidelines, which were adopted after he committed his offense, the Court held that this violated the *Ex Post Facto* Clause.

Appellant points out that in reaching this result, the Court in *Peugh* stated that the scope of the *Ex Post Facto* Clause "is not limited to legislative acts," and he believes that the Court thereby intended to expand the scope and applicability of the Clause to other non-legislative situations, such as when trial courts mistakenly apply laws retroactively. However, as the Texas Court of Criminal Appeals explained in *Ex parte Heilman,* 456 S.W.3d 159 (Tex.Crim.App. 2015), *Peugh* does not stand for this proposition.

In *Heilman*, the Court recognized that under the holding in *Peugh*, it is not just the legislature acting alone that may violate the *Ex Post Facto* Clause, and that executive agencies may also violate the Clause when they are exercising rule-making authority delegated to them by the legislature. *Id.* at 165 (noting that the legislature "cannot escape the strictures of either the Texas or federal *Ex Post Facto* Clause by mere delegation"). However, the Court in *Heilman* made it clear that *Peugh* did not expand the scope of the *Ex Post Facto* Clause to situations in which a trial court has simply erred by misapplying a law retroactively; instead, the Court explained that the error must have some "legislative origin" for the *Ex Post Facto* Clause to be invoked. In particular, the Court noted that *Peugh* requires courts to "look beyond the actor that is directly committing the alleged [ex post facto] violation for some legislative origin of the alleged violation – such as the enabling statutes of either the United States Sentencing Commission in

3

*Peugh*, or the state parole board in *Garner*."[2]  *Id.*  The Court concluded that "the Supreme Court's reasoning in *Peugh* reaffirms our holding in *Ortiz* that the *Ex Post Facto* Clause is 'directed at the Legislature, not the courts.'"  *Id.* at 165.

Applying this rationale, the Court in *Heilman* found that no e*x post facto* violation occurred where the trial court's conduct – in accepting a plea agreement that allowed a defendant to plead guilty to an otherwise time-barred plea offense – originated from the parties' plea negotiations, and did not derive from any law or rule enacted by the Legislature or a delegated body.  *Id.*

Similarly, in the present case, Appellant cannot point to any "legislative origin" for the error in the trial court's jury charge.   The erroneous jury charge did not arise from any law or rule promulgated by the Legislature or from any other legislative or executive body having delegated rule-making authority.   In fact, as stated above, the continuous sexual abuse statute itself explicitly disallows its *ex post facto* application, and the trial court therefore simply erred when it applied the statute in that manner.

As *Peugh* did not extend the scope of the *Ex Post Facto* Clause to judicial actions of this nature, we conclude that Appellant has not shown an *ex post facto* violation based solely on the trial court's erroneous jury charge in this case.   Appellant's motion for rehearing is denied.


                                        STEVEN L. HUGHES, Justice
July 1, 2015

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)

---

[2] In *Garner*, the U.S. Supreme Court held that the retroactive application of a rule promulgated by a state parole board could arguably violate the *Ex Post Facto* Clause, as the Board operates under an "enabling statute" enacted by the Georgia Legislature, which allowed the Board to adopt such rules and to make determinations regarding a prisoner's release.  *Garner v. Jones*, 529 U.S. 244, 257, 120 S.Ct. 1362, 1371, 146 L.Ed.2d 236 (2000).